634

Carlos Rosario Mercado et al., demandantes y recurrentes, *v.* San Juan Racing Association, Inc., demandada y recurrida.

Número: R-65-228      Resuelto: 6 de junio de 1967

*S. L. Lagarde Garcés* y *Manuel Abréu Castillo,* abogados de los recurrentes; *Brown, Newsom & Córdova* y *Carlos Cebollero,* abogados de la recurrida.

Sala Segunda integrada por el Juez Asociado Señor Belaval como Presidente de Sala y los Jueces Asociados Señores Hernández Matos, Santana Becerra y Dávila.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ MATOS emitió la opinión del Tribunal.

El 17 de marzo de 1965, los agentes hípicos de Puerto Rico que desde el 4 de abril de 1962 hasta el 9 de febrero de 1965 estuvieron al servicio de San Juan Racing Association, Inc., dueña y operadora del hipódromo EL COMANDANTE, al amparo de la Ley Uniforme de Sentencias Declaratorias,

Núm. 47 de 1931, instaron una acción declaratoria contra dicha asociación para que el tribunal, con arreglo al inciso 13 del Art. 6 de la Ley Hípica de Puerto Rico, aprobada el 22 de julio de 1960, y la Resolución de 28 de marzo de 1962 dictada por la Junta Hípica, declarara que la asociación demandada les adeudaba el 10% sobre el valor total de las jugadas o apuestas de dupleta hechas en sus respectivas agencias hípicas durante ese período.

Compareció la San Juan Racing Association, Inc., y alegó que los agentes hípicos hicieron ante la Junta Hípica un planteamiento igual al que hacían en la acción y que el mismo había sido resuelto adversamente a ellos por dicha Junta mediante Resolución del 9 de febrero de 1965, y que, no obstante aceptar que el asunto no estaba ante la Junta Hípica, el hecho de haberlo resuelto ésta privaba al tribunal de jurisdicción sobre la materia por lo que procedía desestimarse la acción declaratoria. El texto de esa alegación lo insertamos más adelante.

La acción fue resuelta en sus méritos por sentencia dictada el 14 de octubre de 1965, declarándose sin lugar la demanda. El fundamento básico de tal fallo fue que la Resolución del 28 de marzo de 1962 "no tiene el alcance que pretenden los demandantes que tenga y que así fue resuelto acertadamente por el organismo administrativo con jurisdicción sobre la materia", en otras palabras, que no fijó por ciento alguno a pagarse a los agentes hípicos sobre el valor de las apuestas de dupleta hechas en sus agencias.

Libramos el auto para revisar esa sentencia final. Señalan los agentes hípicos recurrentes que el tribunal de instancia incurrió en los siguientes errores:

"*Primer Error*—El Tribunal cometió error de hecho y derecho al declarar que la Resolución del 28 de marzo de 1962 sólo se contraía al pago de 10% de comisión a los Agentes Hípicos en relación con los cuadros y papeletas por ellos sellados y vendidos en sus agencias.

*Segundo Error*—El Tribunal cometió error de hecho y derecho al concluir que el Artículo 604 de la Sección VI de la Ley y Reglamento Hípico sólo faculta a la Junta Hípica a fijar comisión a percibirse por los Agentes en casos de papeletas y cuadros, pero no así de dupletas.

*Tercer Error*—El Tribunal cometió error de hecho y derecho al determinar que la enmienda al Artículo 722 del Reglamento Hípico se hizo con el objeto de fijar la comisión a favor de los Agentes Hípicos en relación con las dupletas cuando dicha enmienda solamente se refiere a la forma de computar la comisión de los Agentes previamente fijada en la Resolución de la Junta Hípica de fecha 29 de marzo de 1962 en relación con el Artículo 604 del Reglamento Hípico.

*Cuarto Error*—El Tribunal cometió error de hecho y derecho al ignorar el texto claro, preciso y libre de ambigüedades del Artículo 604 que faculta a la Junta para fijar la comisión a percibirse por los Agentes Hípicos por las apuestas que por su conducto se hagan, debiendo ser dicha comisión una participación del valor total de las combinaciones jugadas en las agencias.

*Quinto Error*—El Tribunal cometió error de hecho y derecho al ignorar las definiciones de 'cuadro', 'papeleta' y 'dupleta' del Reglamento Hípico de Puerto Rico en sus Artículos 114, 120 y 137.

*Error Adicional*—El Tribunal *a quo* cometió error de hecho y derecho al declarar sin lugar la demanda, pues privó a los Agentes Hípicos de justa compensación por trabajo realizado para la San Juan Racing Association, Inc.; permitió y sancionó el enriquecimiento injusto de la San Juan Racing Association, Inc. e ignoró el derecho constitucional de todo ser humano a recibir igual paga por igual trabajo, Sección 16, Artículo 2 de la Carta de Derechos de la Constitución del Estado Libre Asociado de Puerto Rico."

Tienen razón los demandantes-recurrentes. Todos los errores apuntados fueron obviamente cometidos. La sentencia será revocada y en su lugar dictaremos otra declarando que los agentes hípicos tienen derecho a que la asociación demandada recurrida les liquide y pague una comisión del

diez por ciento sobre el valor total de las jugadas de dupleta hechas en sus respectivas agencias hípicas desde el 4 de abril de 1962 hasta el 9 de febrero de 1965, con los pronunciamientos adicionales que estimemos necesarios para la efectividad y ejecución de nuestro fallo.

Expondremos a continuación los fundamentos de nuestro dictamen. Vamos a reseñar y comentar primeramente los antecedentes de derecho en que se autoriza la comisión y se fija su por ciento sobre las apuestas de dupleta.

# I

(A) *Disposiciones de la Ley Hípica.* El deporte hípico está regulado en Puerto Rico por la Ley Núm. 149, aprobada el 22 de julio de 1960 denominada "Ley Hípica de Puerto Rico." Se le dio efecto retroactivo al 1ro. de julio de 1960. Su administración se concedió por ese estatuto a una Junta Hípica y a un Administrador Hípico.

A la Junta se le otorgó facultades generales y específicas. Entre las primeras, la de adoptar los reglamentos del deporte hípico, previa audiencia pública, y reglas para su organización y funcionamiento interno y la celebración de sus reuniones. Los reglamentos adoptados, una vez aprobados por el Gobernador y radicados en el Departamento de Estado, tendrían "fuerza de ley y su violación constituirá delito menos grave" castigable según se dispone en la misma ley.

Entre las facultades específicas que en el Art. 6 de esa Ley Hípica se concede a la Junta Hípica están las siguientes respecto a las apuestas y a los agentes hípicos:

"(2) Reglamentar todo aquello que se relacione con la forma en que deberán hacerse las apuestas en [1] las bancas, [2] *pools,* y [3] quinielas *(daily double)."*

.   .   .   .   .   .   .   .

"(13) Fijar la comisión que podrán percibir los agentes *por los sistemas de jugadas autorizadas,* siendo en todo

caso dicha comisión el por ciento que se fije del *valor total de las combinaciones o jugadas* de las agencias respectivas." (Énfasis suplido.)

En el Art. 12 de la ley se autorizan los siguientes descuentos en jugadas:

"Las personas naturales o jurídicas explotadoras de los hipódromos harán los siguientes descuentos en las apuestas: 25 por ciento sobre la cantidad total aportada en las bancas, después de deducir el dinero apostado a los caballos ganadores en las respectivas carreras y el 30 por ciento del total bruto apostado en las jugadas de quiniela y *pool*.

El total bruto que se derive por concepto de dichos descuentos, excepto el de las bancas, se distribuirá en la forma siguiente: noventa y cinco por ciento (95%) para la persona natural o jurídica explotadora del hipódromo y cinco por ciento (5%) para el Fondo General del Tesoro Estatal. El descuento de las bancas será para el hipódromo."

(B) *Disposiciones del Reglamento:* La Junta Hípica adoptó un Reglamento general, que fue aprobado por el Gobernador el 23 de febrero de 1962 y radicado en el Departamento de Estado el 2 de abril siguiente.

En su Art. 1 se fija el significado que tendrán, entre otras, las siguientes palabras:

(3) *Agente hípico*: Persona designada por la asociación para recibir *apuestas de pool y quiniela*.

(7) *Asociación*: Persona natural o jurídica autorizada para operar un hipódromo en Puerto Rico.

(8) *Banca*: Lugar designado para efectuar apuestas en cada carrera y el sistema de apuestas conocidas con tal nombre.

(14) *Cuadro*: Impreso donde se anotan dos o más combinaciones de jugada en el *pool*.

(20) *Dupleta* (quiniela) : *Apuesta* para acertar los ganadores *de dos carreras* específicamente designadas para tal *apuesta*.

(37) *Papeleta*: Impreso donde se anota una sola combinación de jugada en el *pool*.

(39) *Pool*: Jugada consistente en acertar el mayor número de ejemplares ganadores y el mayor número de ejemplares ganadores menos uno.

Por el Art. 205 se provee: "Las reglas, reglamentos y órdenes que periódicamente expida la Junta, en lo pertinente, forman parte integrante de la licencia originalmente otorgada." El 223 repite, con ligera alteración, ese Art. 205.

El Art. 601 autoriza el sistema de apuestas o sea el sistema de jugadas a que se refiere el inciso 13 del Art. 6 de la Ley Hípica, así:

"La Asociación estará obligada a mantener en su hipódromo *un sistema de apuestas para* [1] el juego de *pool,* [2] *bancas* y [3] *dupletas* y no podrá suspender dichos sistemas de apuestas sin la previa autorización de la Junta; disponiéndose, que la Junta para así autorizarlo deberá celebrar una vista pública." (Énfasis suplido.)

El 602, sobre agentes hípicos para recibir apuestas, provee:

"La Asociación designará agentes hípicos para *recibir apuestas* de [1] *pool* y [2] *dupleta.*" (Énfasis suplido.)

Por el Art. 604 se reprodujo el transcrito inciso 13 del Art. 6 de la Ley Hípica, *pero en los siguientes términos*:

"La Junta fijará la comisión que percibirán los agentes *por las apuestas que por su conducto se hagan,* debiendo ser dicha comisión *una participación del valor total de las combinaciones jugadas en la agencia.*" (Énfasis suplido.)

█ Hay varias diferencias de expresión entre el texto de este Art. 604 del Reglamento y el del inciso 13 del Art. 6 de la Ley Hípica, que deben observarse, a saber:

1ra. En este inciso 13 se habla de la comisión que los agentes "podrán percibir"; en el Art. 604 se dice "que percibirán".

2da. En el inciso 13, se dice que la comisión se podrá percibir "por los sistemas de jugadas autorizadas"; en el Art. 604 se dice "por las apuestas que por su conducto se hagan".

3ra. En el inciso 13, se dice "siendo en todo caso dicha comisión el por ciento que se fije"; en el Art. 604 se lee "debiendo ser dicha comisión una participación del valor".

4ta. En el inciso 13, se dice "del valor total *de (1) las combinaciones o (2) jugadas*"; en el Art. 604 se lee "del valor total de las *combinaciones jugadas*". (Énfasis suplido.)

Empero, luego de un análisis de tales diferencias se llega a la conclusión de que son aparentes, puesto que el texto del Art. 604 resulta ser una mera forma distinta de exponer la misma idea o concepto que el inciso 13 del Art. 6 que la Ley Hípica expresa.

Por ello la expresión "combinaciones jugadas" del Reglamento, en la que aparece suprimida la conjunción "o", que emplea el texto del inciso 13 del Art. 6 de la Ley Hípica, debe leerse, entenderse y aplicarse como si se dijera "combinaciones o jugadas."

El Art. 683 dice:

**"Bancas, dupleta y 'pool'; cálculos separados**

En toda carrera las apuestas en las bancas para primero y segundo, las de la dupleta y las del *pool*, serán manejadas separadamente y los cálculos sobre las mismas se harán independientemente unas de otras."

Los Arts. 701, 702, 704, 705, 706 y 707 del Reglamento prescriben:

**"Art. 701. Dónde se apostará**

La apuesta de dupleta sólo podrá hacerse en las agencias y en el sitio designado para ello en el hipódromo.

**Art. 702. Sólo una por día**

Sólo habrá una dupleta por día de carrera. La Asociación designará las dos carreras que constituirán la dupleta.

. . . . . . . .

### Art. 704. Sistema de apuestas

El sistema de apuestas para la dupleta operará de la misma manera que las papeletas del *pool,* esto es, que en un boleto solamente *podrá hacerse una sola combinación,* en la que se designarán los ejemplares seleccionados por el jugador por el número que les corresponda en el programa oficial.

### Art. 705. Boletos

Solamente podrán usarse para las jugadas de la dupleta los boletos que apruebe el Administrador.

### Art. 706. Valor de combinaciones

El valor por *cada combinación en la apuesta de dupleta* será de $2.

### Art. 707. Precio máximo para apostadores

"El precio para el apostador *por cada impreso* para la dupleta no excederá de 10 centavos cuando se obtenga por mediación de un agente hípico." (Énfasis suplido.)

Los Arts. 722 a 725 se refieren a la forma de hacer el cómputo del *dividendo* de la dupleta, del aviso al público del dividendo, de su caducidad y de la presunción de que el poseedor de un boleto de dupleta es su dueño.

El Art. 1401, por la violación del Art. 604, que trata de la comisión de los agentes hípicos, prescribe un castigo de multa de $500, suspensión o cancelación de licencia.

■ Habiéndose adoptado y aprobado el Reglamento con el fin de implementar la ejecución de la Ley Hípica, en cualquier conflicto entre sus textos debe prevalecer el de esa Ley. Jamás debe entenderse modificado o suplantado el texto legal por el reglamentario. *Ex Parte Irizarry,* 66 D.P.R. 672, 676 (1946) y casos allí citados.

(C) *Resolución de la Junta Hípica.* El 28 de marzo de 1962, la Junta Hípica aprobó la siguiente resolución que fijó la comisión que percibirían los agentes hípicos:

"Resolución

Según lo dispuesto en el Artículo 6, inciso 13, de la Ley Hípica de Puerto Rico, y a tenor con lo dispuesto en el Artículo 604 del Reglamento Hípico adoptado por esta Junta y aprobado por el Gobernador el 23 de febrero del año en curso, por la presente se fija a los Agentes Hípicos una comisión del diez por ciento (10%) sobre el valor total de las combinaciones jugadas en las agencian respectivas.

Esta Resolución comenzará a regir a partir del día 4 de abril del año en curso, hasta tanto esta Junta disponga otra cosa.

Así lo acordó la Junta y lo ordena su Presidente."

## II

■ Apoyándonos en esos antecedentes, afirmamos que el derecho a percibir los agentes hípicos una comisión por todos los sistemas de jugadas autorizados (según los Arts. 601 y 704 del Reglamento (1) juego de *pool*, (2) bancas y (3) dupletas), de un por ciento, o una participación, en el valor total de las combinaciones o jugadas de las agencias respectivas, fue originalmente autorizado, declarado, definido y establecido claramente en el inciso 13 del Art. 6 de la Ley Hípica que empezó a regir, repetimos, el 1ro. de julio de 1960.

El *quantum*, medida o monto de tal por ciento o participación, quedó para ser discrecionalmente fijado por la Junta Hípica. Para el ejercicio de esa facultad se fijaron en la ley previamente dos líneas rectoras que la Junta debía seguir, a saber:

a) La comisión cuyo monto fijaría, sería por los sistemas de jugadas autorizadas, es decir (1) juego de *pool*, que incluye cuadros y papeletas y (2) dupletas, que se realizaran en las agencias hípicas respectivas, y

b) *en todo caso*, el por ciento o participación se fijaría sobre el *valor total de las combinaciones o jugadas.*

El texto de la transcrita Resolución del 28 de marzo de 1962, responde fielmente a la obligación impuesta a ese organismo por la Ley Hípica, puesto que dice:

"Según lo dispuesto en el Artículo 6, inciso 13, de la Ley Hípica de Puerto Rico . . . por la presente se fija a los Agentes Hípicos una comisión del diez por ciento (10%) sobre el valor total de las combinaciones jugadas en las agencias respectivas."

Aunque con retraso, así positiva e indubitadamente, ejercitó la Junta Hípica su facultad de fijar el monto o la medida de tal comisión. No estableció distinciones, exclusiones o excepciones respecto a tipos o clases de jugadas, apuestas o combinaciones.

Ni los agentes hípicos, ni la San Juan Racing Association, Inc., la impugnaron en forma alguna. Con arreglo a los Arts. 205 y 223 entró tal Resolución a "formar parte integrante de la licencia originalmente otorgada" a la asociación. Empezó a regir el 4 de abril de 1962, dos días después de entrar en vigor el Reglamento. Hasta hoy, respecto a ella, la Junta Hípica, no ha dispuesto "otra cosa".

Acepta la recurrida que la violación del Art. 604 podría ocasionarle la cancelación de su licencia. El Art. 1201 del Reglamento dispone, en parte:

". . . Toda persona que en cualquier capacidad haya obtenido u obtenga una licencia o participe en cualquier forma en la actividad hípica, *se presume que lo hace con pleno conocimiento de la Ley Hípica*, . . . *resoluciones* y órdenes que hayan sido promulgadas o que se promulguen *y estará obligada a su cumplimiento*." (Énfasis suplido.)

Con ello, a partir del 4 de abril de 1962, respecto a la comisión sobre el valor de jugadas de cuadros, papeletas y dupletas recibidas en agencia, se creó un firme estado de derecho a ser observado, respetado y acatado *erga omnes*, y más que por nadie, por la asociación.

■ Ni el legislador, ni la Junta Hípica han provisto o resuelto "otra cosa" en contrario. No han alterado, modificado, derogado, anulado o suspendido en todo o en parte la Resolución del 28 de marzo de 1962. Y a las órdenes y resoluciones legítimas de la Junta y a su Reglamento y Reglas, les es aplicable por analogía el principio de que las leyes sólo se derogan por otras leyes posteriores, y no prevalecerá contra su observancia el desuso, la costumbre o la práctica en contrario que tiene su sede en el Art. 5 de nuestro Código Civil. Cf. *Piñero* v. *Barreto*, 68 D.P.R. 145 (1948); *Reyes* v. *Torres*, 65 D.P.R. 821 (1946).

La San Juan Racing Association, Inc., respetó, acató y cumplió la Resolución del 28 de marzo de 1962. Pero parcialmente. Pagó a sus agentes hípicos la comisión del 10% únicamente por el valor de las jugadas para el *pool*, es decir, sólo respecto a cuadros y papeletas recibidos en sus agencias respectivas. Pero, no obstante exponer por escrito "que considera justo y razonable que los agentes hípicos reciban una comisión sobre el importe de la jugada de dupleta de un diez por ciento (10%)" (Anexo 4), desde el 4 de abril de 1962 hasta el 9 de febrero de 1965 se negó a pagarles tal comisión sobre apuestas, jugadas o combinaciones de dupleta o quiniela. Por su cuenta, unilateral y caprichosamente, en la práctica las eliminó de la Ley Hípica, del Reglamento y de la Resolución.

Razones que aduce para ello según fueron expuestas por ella en un Memorándum de fecha 26 de enero de 1965 (Apéndice III, Oposición a la Solicitud del Auto):

(A) La Resolución de la Junta del 28 de marzo de 1962 es aplicable únicamente a las jugadas de *"pool"* y no de "dupleta", y ésa fue la intención de esa Junta.

(B) Hasta el 10 de agosto de 1964 el Reglamento no autorizó el descuento de la comisión que le correspondiera a los agentes en la jugada de la dupleta y a falta de tal autoriza-

ción, que se concedió por enmienda de esa fecha al Art. 722 del Reglamento, no se podía pagar tal comisión.

(C) Para que los agentes hípicos "puedan recibir una comisión de lo jugado en la dupleta" será necesario que la Junta fije esa comisión por una nueva resolución.

Ninguna de esas llamadas razones tiene el más leve rastro, el más tenue indicio de valor o mérito jurídico alguno. Son claramente insostenibles. Veamos.

(A) En apoyo de la primera razón expone la asociación en su alegato que la intención de la Junta al dictar la Resolución del 28 de marzo de 1962 fue "sencillamente renovar el derecho de los agentes a percibir una comisión sobre las apuestas del *pool* que iba a quedar sin base al cesar de regir el reglamento anterior y, que "es elocuente indicación también de lo que la Junta tuvo en mente al adoptar la resolución, el que, posteriormente, ni la Junta ni el Administrador Hípico tomaran acción alguna para ver de que los agentes cobrasen comisión sobre la dupleta, como hubiera sido el caso si la resolución original hubiera tenido ese propósito."

■ El mero y alegado propósito que pudiera tener la nueva Junta de renovar la anterior comisión que percibían los agentes hípicos por las jugadas de *pool*, cuadros y papeletas, no impidieron al legislador que extendiera y ampliara tal comisión, como reza la Ley Hípica, a todos los *sistemas de jugadas autorizadas*, a todo caso, y *al valor total de las combinaciones o jugadas* de las respectivas agencias; ni quedó la propia Junta Hípica atada a no hacer tal extensión, puesto que ella, al contrario, efectiva y claramente dispuso, que tal comisión la percibirían los agentes hípicos "por las apuestas que por su conducto se hagan, debiendo ser dicha comisión una participación del valor total de las combinaciones jugadas en la agencia." Ni tampoco el atribuido propósito de exclusión o limitación, impidió a que en el Reglamento se identificara la dupleta o quiniela como uno de los sistemas de apuestas—Art. 601—

como una apuesta para acertar los ganadores de dos carreras específicamente designadas para tal apuesta—Art. 1(20)—; ni impidió que la Junta al incluir la dupleta en el sistema de apuestas, la identificara obviamente como un boleto en que "podrá hacerse *una sola combinación*"—Art. 704—ni impidió que en su Reglamento dispusiera que *el valor por cada combinación en la apuesta* de dupleta será de $2.00; ni impidió que la llamara "jugada de dupleta"—Art. 708—ni que en la propia Ley Hípica—Art. 12—se hablara del total bruto apostado en *las jugadas de quiniela* y *pool*. Luego de leerse la ley y el reglamento, necesariamente se debe entender que la dupleta es una apuesta, es una jugada, es una combinación.

La circunstancia de que ni la Junta ni el Administrador tomaran oficiosamente acción alguna para que se les pagara la comisión a los agentes, nada significa en contrario al verdadero sentido literal de la Resolución, ni le priva de efectividad, validez y obligatoriedad. Tal silencio oficial no equivale a derogación alguna del Reglamento o de las órdenes y resoluciones de la Junta. No hay evidencia que persona alguna pidiera a ellos su intervención o mediación en el asunto. Es más, ni los propios agentes hípicos hicieron reclamación alguna hasta principios del año 1965. No se le debe dar tampoco a tal inactividad mayor significación. Aquí no se han suscitado defensas de prescripción o caducidad.

Dice en su alegato también la recurrida que las combinaciones a que se alude en el Art. 604 del Reglamento "debe entenderse que son las del '*pool*' y al copiar la Junta la frase 'valor total de las combinaciones jugadas' es razonable suponer que tenía en mente usarla en el mismo sentido limitado, aunque las palabras que utilizó, consideradas por sí solas, *fueran susceptibles de una definición más lata.*"

Desde luego, la asociación demandada no recurre al lenguaje amplio, al sentido abarcador y comprensivo del texto que aquí más obliga, no sólo a ella, sino a todos: el del inciso 13, Art. 6 de la Ley Hípica.

■ Ese inciso 13 crea una comisión *"por los sistemas de jugadas autorizadas"* —*pool,* cuadros, papeletas, bancas, dupletas o quinielas constituyen por Reglamento tales sistemas, Arts. 601 y 704, repetimos por cuarta o quinta vez— "siendo en todo caso dicha comisión el por ciento que se fije del *valor total de las combinaciones o jugadas* en las agencias respectivas." Jugada es el cuadro, es la papeleta (la apuesta en banca, pero que no se hace en las agencias) y es la apuesta de dupleta". La propia recurrida llama a la quiniela "jugada de dupleta", en varias ocasiones.

El propio tribunal sentenciador al referirse al alcance amplio del inciso 13 del Art. 6 de la Ley Hípica, nos dice que es *"un artículo de la ley que indudablemente abarca todas las apuestas hípicas ...".*

La San Juan Racing Association, Inc., explota el error de redacción que se cometió al final del Art. 604 del Reglamento al suprimirse, inadvertidamente es de suponerse, la conjunción "o" de la frase "combinaciones o jugadas" que se emplea en el inciso 13 del Art. 6 de la Ley Hípica, y hacerse figurar en su lugar, en dicho Reglamento, sólo las palabras "combinaciones jugadas".

■ Pero aun así, el término "combinaciones jugadas", lógicamente comprende y se refiere a la dupleta o quiniela. "Combinar", significa unir cosas diversas, de manera que formen un compuesto o agregado, y "combinación", es la unión de dos cosas en un mismo sujeto, según el Diccionario de la Lengua Española.

Volvamos a las definiciones contenidas en el Reglamento Hípico, Art. 1. En ellas encontramos que la Dupleta (quiniela) es "Apuesta para acertar los ganadores *de dos carreras específicamente designadas para tal apuesta."* Es decir, del número de caballos que participan en la quinta carrera, en la que pueden llegar a competir hasta catorce caballos, el jugador de dupleta selecciona uno, y de los que corren en la

sexta, selecciona el otro. Ambos ejemplares, así combinados, forman la dupleta. De modo que, obviamente, la dupleta está incluida en el término "combinaciones jugadas", del Art. 604 del Reglamento. Y por si esto no fuera suficiente para así entenderlo, volvemos a transcribir los Arts. 704 y 706, para demostrarlo definitivamente:

**"Art. 704. Sistema de apuestas**

El sistema de apuestas para la dupleta operará de la misma manera que las papeletas del *pool,* esto es, que en un boleto solamente podrá hacerse *una sola combinación,* en la que se designarán los ejemplares seleccionados por el jugador por el número que les corresponda en el programa oficial.

.   .   .   .   .   .   .   .

**Art. 706. Valor de combinaciones**

"El valor por *cada combinación* en la apuesta de dupleta será de $2." (Énfasis suplido.)

A la luz de estos dos artículos del Reglamento, resulta incorrecta la afirmación que hace tanto la recurrida en su alegato, como el Tribunal de instancia en su opinión, de que el Reglamento "emplea la palabra 'combinaciones' . . . en conexión con los cuadros . . . *pero no en conexión con la dupleta."* (Énfasis suplido.)

B.   Dispone el Art. 722 del Reglamento:

**"722.—Cómputo del dividendo.** El dividendo de la dupleta será computado y distribuido de la siguiente manera:—Del total apostado se deduce el 30 por ciento fijado por ley; del balance se deduce el 10 por ciento de arbitrios impuesto por ley; el balance resultante se divide entre el número de boletos agraciados para determinar el dividendo correspondiente a pagarse por cada boleto."

Nada tiene que ver este artículo con la concesión del derecho a recibir la comisión sobre el valor de la apuesta o jugada de dupleta hecha por el inciso 13 del Art. 6 de la Ley Hípica; ni con el por ciento o participación que fijó la Resolución del 28 de marzo de 1962. Ni el derecho a recibirla, ni la me-

dida en que se debe recibir, resultan afectados por el Art. 722, que lo único que hace es establecer la mecánica o proceso para la liquidación o computación del dividendo de la dupleta, al igual que lo hace el Art. 640 respecto al *pool* y o hacen los Arts. 687 y 688 respecto a las jugadas de bancas. El Art. 683 obliga a que las apuestas de bancas, las de la dupleta y la del *pool* "serán manejadas separadamente y los cálculos sobre las mismas se harán independientemente una de otras."

El simple cálculo matemático, si así lo podemos llamar, de la comisión para los agentes por jugadas de dupleta, no hay que someterlo a ningún proceso de cómputo del dividendo. Está prefijado. El valor "por cada combinación en la apuesta de dupleta será de $2.00", dispone el Art. 706. El 10% de ese valor resulta ser 20 centavos.

Cada agente entrega la cantidad de $2.00 al hipódromo por cada dupleta que ha vendido en su agencia. Tan pronto como hace la entrega del valor de cada dupleta, se convierte, de derecho, en un perfecto titular de una participación en ese valor de 20 centavos. Ya esos veinte centavos por dupleta, no son del Estado, no son de la San Juan Racing Association, Inc., no son de la Administración Hípica, no son de los ganadores de dupleta. Pertenecen desde ese instante a los agentes hípicos respectivos, por ministerio de ley, y a ellos se les debe entregar en el momento oportuno.

¿Cómo, entonces es posible sostener, como se sostuvo ante la Junta, que al enmendarse en 10 de agosto de 1964 el Art. 722 fue cuando "por primera vez se autorizó la deducción de la comisión de los agentes sobre las apuestas de dupleta"? ¿Cómo se puede seriamente afirmar que no fue hasta la fecha de tal enmienda "que el camino estuvo expedito para que por la Honorable Junta se fijare la comisión de los agentes en la jugada de la dupleta. *Lo cual aún no ha hecho*"?

Está claro, que es posible mantener tal posición, únicamente a la luz de la interpretación incorrecta que hace la San Juan Racing Association, Inc., de que la Resolución del 28 de

marzo de 1962 "se refiere únicamente a las jugadas para el *pool*", y no a las jugadas de dupleta. Con tal desacertada tesis se logró persuadir al tribunal de instancia.

En derecho, el camino estuvo expedito desde el 1ro. de julio de 1960, más de cuatro años antes, pero más bien, desde que se constituyó dicha Junta Hípica, a la luz de una disposición de ley absolutamente clara y libre de toda ambigüedad.

Al conceder la Ley Hípica, respecto a todas las combinaciones o jugadas hípicas realizadas en las agencias, facultad a la Junta Hípica para fijar el *quantum* de la comisión para los agentes, no condicionó, sujetó o supeditó su ejercicio a la previa adopción de un mecanismo o proceso para el cómputo del dividendo de jugadas o apuestas de dupleta, ni tan siquiera a la adopción y vigencia de algún Reglamento. Entendiéndolo así, la Junta fijó el por ciento por resolución que aprobó antes de la fecha de empezar a regir el Reglamento, aunque le dio efectividad para después de tal fecha.

(C) Para cobrar la comisión por las jugadas de dupleta no se necesitaba, en absoluto, la aprobación de una nueva resolución. La del 28 de marzo de 1962, era suficiente y bastante en derecho para tal propósito. No lo parecía así, desde luego, para la San Juan Racing Association, Inc., en lo referente a las jugadas de dupleta.

Sin embargo, después de haber transcurrido dos años ocho meses de la fecha—4 de abril de 1962—en que debió haber empezado a pagar la comisión por apuestas de dupleta, sin haberla pagado, no porque dejaran de cobrársela, sino porque se sintió no obligada a ello, la recurrida San Juan Racing Association, Inc., el 16 de diciembre de 1964 presentó ante la Junta Hípica una solicitud que dice así:

"1. Que los agentes hípicos no vienen recibiendo comisión alguna sobre el importe o valor de las jugadas que para la dupleta se viene haciendo en las agencias hípicas.

2. Que la peticionaria considera justo y razonable que los agentes hípicos reciban una comisión sobre el importe de la

jugada de dupleta de un diez por ciento (10%) o sea, un por ciento igual al que reciben y han venido recibiendo los agentes hípicos hace ya algún tiempo sobre el importe de la jugada para pool que se hace en sus agencias.

3. Que esa Honorable Junta Hípica en marzo 28, de 1962 dictó resolución conforme a la autoridad que le concede el inciso 13 del Artículo 6 de la Ley Hípica de Puerto Rico, fijando 'a los agentes hípicos una comisión del diez por ciento (10%) sobre el valor total de las combinaciones jugadas en las agencias hípicas'.

4. Que en la práctica, esta resolución se ha venido interpretando y aplicando en el sentido de que se refiere únicamente a las jugadas para el pool.

POR TODO LO CUAL, de esta Honorable Junta el peticionario solicita, conforme a las disposiciones del inciso 13, Artículo 6 de la Ley Hípica de Puerto Rico y la Sección 604 del reglamento hípico vigente, que dicte resolución fijando a los Agentes Hípicos una comisión del diez por ciento (10%) sobre el valor total de las jugadas de dupleta en las agencias respectivas, previo los trámites pertinentes."

Confiesa implícitamente en tal solicitud que no se les ha pagado la comisión por dupleta a sus agentes; considera "justo y razonable" que ellos la reciban en un diez por ciento; hace referencia a la Resolución de 1962, pero alega "que en la práctica, esta resolución se ha venido interpretando y aplicando—sin especificar por quién—en el sentido de que se refiere únicamente a las jugadas para el pool." Finalmente pide que la Junta haga, repita o duplique, lo que ya legalmente había hecho: fijar el por ciento "del valor total de las combinaciones o jugadas de las agencias respectivas", como se lo ordenaba la ley. Pero se cuida mucho de no hacerles la debida justicia a los que, por todas las ciudades, pueblos y barrios de Puerto Rico se afanan por recibir jugadas hípicas del público apostador, que día tras día de carreras, en épocas de abundancia y en épocas de penuria, sostienen el negocio de ese costoso juego de carreras de caballos. No le pide a la Junta

que, ya que ésta haría lo mismo que había hecho el 28 de marzo de 1962, se le diera efectos retroactivos a tal fecha, a la resolución que declarase con lugar su solicitud y proveyera de conformidad con ella.

La Junta Hípica debió haber rechazado de plano dicha solicitud. Las razones son obvias: (1) La misma era un colateral y tardío ataque a la Resolución del 28 de marzo de 1962, cuya indiscutible efectividad respecto a las apuestas de dupleta se interesaba anular; (2) por resultar confiscatoria por la ausencia del pedimento de efectividad retroactiva; (3) por tender a amparar un indebido enriquecimiento; (1) (4) por pretender ignorar o destruir derechos adquiridos al amparo de un consentido estado jurídico asentado sobre una ley, un reglamento y una anterior resolución; (5) por pretender anular la efectividad de un reglamento y una resolución anteriores a base de su propia práctica e interpretación sobre disposiciones y resoluciones claras y libres de ambigüedades.

En vez de hacerlo así, la Junta Hípica el 9 de febrero de 1965 dictó una resolución inútil, que ningún estado de derecho distinto al imperante creó, que no respondía a alguna real y positiva necesidad, pero que para gloria espuria y beneficio indebido de la San Juan Racing Association, Inc., y acorde con el juego interpretativo de ésta, sin resolverlo, puede crear la sensación de que (1) hasta el 9 de febrero de 1965 los agentes hípicos no tenían derecho alguno a comisión por las jugadas de dupletas; (2) la munificencia de San Juan Racing Association, Inc., les concedió tal derecho; (3) la San Juan Racing Association, Inc., determinó y fijó el *quantum* de tal comisión, la Junta se limitó obedientemente a adoptarlo.

La Sala de San Juan del Tribunal Superior que declara franca, expresa y abiertamente, que el inciso 13 del Art. 6 de

---

(1) Los recurrentes informan que desde julio de 1962 a febrero de 1965 se jugaron en las agencias hípicas 2,326,121 dupletas con un valor de $4,652,242.00, del cual había que pagarles $465,224.20 por la comisión del 10%.

la Ley Hípica, que es el texto de mayor autoridad jurídica en el asunto, es *"un artículo de la ley que indudablemente abarca todas las apuestas hípicas"*, jamás debió haber decidido que la nueva, inútil y superflua resolución del 9 de febrero de 1965, "tiene el efecto de dirimir la cuestión que le plantearon los agentes hípicos rechazando el argumento de éstos de que la anterior resolución—la del 28 de marzo de 1962—les había dado derecho a recibir comisión sobre las apuestas de la dupleta." Frente a tal afirmación, podemos decir que, respecto al juez sentenciador recurrido, aquella resolución inútil superflua creó, no una mera sensación, sino una convicción inexplicable, pues la Resolución de 1965 ninguna controversia resolvió.

## IV

Bajo el epígrafe de "La Cuestión Procesal" la recurrida plantea la improcedencia de la acción declaratoria. Vamos a exponer, según la entendemos, cual fue la realidad procesal previa a la iniciación de la acción.

Como ya apuntamos, el 16 de diciembre de 1964, la San Juan Racing Association, Inc., radicó ante la Junta Hípica una solicitud para que se fijara una comisión para los agentes por apuestas de dupleta. Se predicaba en la ausencia de tal comisión. Se pagaría, desde luego, a partir desde que se fijara. La solicitud no se notificó a persona alguna.

El 22 de enero de 1965 los agentes hípicos radicaron, ante la propia Junta Hípica, un escrito denominado "Memorándum" en que transcribían el inciso 13 del Art. 6 de la "Ley Hípica" y la Resolución del 28 de marzo de 1962. Expusieron en él que la comisión concedida por la ley y fijada por dicha Resolución no se les había satisfecho y suplicaron que la Junta ordenara el "pago de las sumas adeudadas a los Agentes Hípicos de Puerto Rico en el 10% de las dupletas a partir del 28 de marzo de 1962." Este "Memorándum" no contiene con-

testación alguna contra la solicitud anterior a la asociación, ni aun la menciona.

En el expediente la asociación presentó un "Memorándum" que sólo tiende a apoyar la solicitud de ella. No contiene réplica alguna contra el de los agentes.

El 9 de febrero de 1965 la Junta proveyendo a la solicitud de la San Juan Racing Association, Inc., dicta la siguiente resolución:

*"Resolución*

En el ejercicio de la facultad que nos confiere el Artículo 6, inciso 13, de la Ley Hípica de Puerto Rico, y a tenor con lo dispuesto en el Artículo 722 del Reglamento Hípico, según enmendado, por la presente se fija a los agentes hípicos una comisión del diez por ciento (10%) sobre el valor total de las combinaciones jugadas en las apuestas de dupleta hechas en las agencias hípicas.

Así lo acordó la Junta y lo ordena su Presidente."

La efectividad y aplicación de tal resolución es prospectiva. Se proyecta hacia el futuro. No hacia el pasado, porque no se le confiere expresamente efectos retroactivos. Ella, supuestamente, concede, por primera vez (no obstante decir que se adopta "En el ejercicio de la facultad que nos confiere el Artículo 6, inciso 13 de la Ley Hípica"), una comisión a los agentes del 10% del valor de las dupletas, tal como se lo pedía la San Juan Racing Association, Inc. Nada resuelve en pro o en contra, de lo pedido por sus agentes hípicos en su "Memorándum" del 22 de enero de 1965, reclamando el pago de lo que alegaban se les adeudaba desde marzo de 1962. De modo que la reclamación de los agentes hípicos ante la Junta quedó en pie.

La acción declaratoria ante el Tribunal Superior, como expusimos, se comenzó el 9 de marzo de 1965. En ella la asociación demandada formuló el 5 de abril siguiente una "Moción sobre Falta de Jurisdicción sobre la Materia" que lee así:

"Al Hon. Tribunal:

Comparece la demandada por su abogado que suscribe, y expone:

1. Que la demanda, instada por un número de Agentes Hípicos a nombre de todos, solicita 'se ordene el pago de las sumas adeudadas a los Agentes Hípicos de Puerto Rico en el 10% de las dupletas a partir del 28 de marzo de 1962'.

2. Que el párrafo IX de la demanda asegura que 'no existe ningún otro asunto pendiente de resolución ante ningún otro tribunal, Junta o funcionario administrativo en cuanto a cuestiones de derecho que puedan estar envueltos en este procedimiento'.

3. Que aunque no discrepamos de los demandantes en cuanto a que ya el asunto que plantean en su demanda no está ante la Junta Hípica, si no lo está es porque al ser planteado ante dicha Junta fue resuelto adversamente a los demandantes, habiendo los demandantes hecho el oportuno planteamiento del mismo ante la Junta Hípica el 22 de enero de 1965, en el caso de San Juan Racing Association, Inc., Peticionaria, Caso No. JH-64-30, sobre 'Fijación de Comisión para los Agentes en apuestas de la dupleta', y habiendo la Junta resuelto el caso mediante resolución de fecha 9 de febrero de 1965. Se acompañan copias fieles de la Resolución y de las alegaciones ante la Junta, a saber, la Solicitud de San Juan Racing Association, Inc. para que se fijara a los Agentes Hípicos una comisión del 10% sobre el valor total de las jugadas de dupleta, y el escrito de los Agentes Hípicos de Puerto Rico solicitando de la Junta (dentro del mismo procedimiento instado por San Juan Racing Association, Inc.) que, puesto que ya se había autorizado por la Junta, en marzo 28 de 1962, el pago de 10% sobre las apuestas de dupleta, procedía ordenar el pago de dicho 10% retroactivamente al 28 de marzo de 1962.

EN VIRTUD DE LO EXPUESTO, y por haberse recurrido a un procedimiento administrativo ante un tribunal competente en el cual se planteó el mismo asunto que ahora pretende plantearse judicialmente, solicitamos que el Tribunal se declare sin jurisdicción para conocer del caso, o en su defecto, lo desestime."

Unos tres días después, el 8 de abril, los agentes acudieron por escrito ante la Junta Hípica, le informaron sobre la radicación de la acción declaratoria, de la transcrita moción de la asociación impugnando la jurisdicción del Tribunal Superior, y que la nueva resolución de esa Junta del 9 de febrero "se contrae exclusivamente a lo solicitado por la San Juan Racing Association, Inc. en su solicitud de fecha 16 de diciembre de 1964 y no hizo disposición sobre la retroactividad que se solicita en la sentencia declaratoria ante el Tribunal Superior . . . ".

Pero pidieron a la Junta Hípica una cosa que era innecesaria, a tenor con lo dispuesto en el Art. 2 del Código Civil, o sea que la Junta hiciera "un pronunciamiento en el sentido de que la retroactividad no fue resuelta por la Resolución de febrero 9, 1965."

Decimos innecesaria, porque para comprobar tal punto, sólo bastaba el propio texto de la resolución. Pero la Junta, en vez de así decidirlo, dictó una resolución el 12 de abril, manifestando ". . . esta Junta se abstiene de hacer pronunciamiento de clase alguna por aparecer de la misma que se trata de un asunto que está sub-judice. . .".

De la resolución nueva de la Junta de fecha 9 de febrero de 1965, que concedía, según ella, la comisión del 10% que hacía años existía, y que no podía afectar derechos substantivos adquiridos al amparo de la Ley de 1960, del Reglamento de 1962 y de la Resolución del 28 de marzo de 1962, los agentes hípicos no tenían motivos para pedir su reconsideración, ni para impugnarla por el procedimiento judicial provisto por el Art. 9 de la Ley Hípica, ni por ninguna vía administrativa necesariamente.

Ésa era la realidad o verdadera situación procesal de aquellos asuntos al momento de iniciarse, y después de iniciarse, la acción declaratoria. Ningún impedimento existía para causar una excepción a la regla del Art. 1 de la Ley

Uniforme de Sentencias Declaratorias de 1931, en el sentido de que "El Tribunal Superior tendrá jurisdicción para declarar derechos, estados y otras relaciones jurídicas *aunque se inste o pueda instarse otro remedio.*" (Énfasis suplido.)

El tribunal a quo implícitamente, desestimó la impugnación a su jurisdicción, al decidirse a "fallar sobre los méritos del caso." Consideró que tenía ante sí todos los elementos o factores de juicio para hacerlo.

Ahora bien. Toda vez que la San Juan Racing Association, Inc., no llegó a formular alegaciones sobre los hechos, en parte posiblemente debido a que el tribunal de instancia procedió a fallar a su favor el pleito en su fondo, y en vista de que en su alegato sostiene "que no es cierto que los recurrentes no recibieran suma alguna por los servicios prestados, por ellos al público al vender dupletas, ya que hemos visto que percibían ocho centavos por cada dupleta de dos dólares que vendían", y que ella "recibió solamente 5.7 centavos de los veinte centavos que reclaman los recurrentes" y que "lo pagado por error de derecho no puede recobrarse", *dispondremos que se devuelvan los autos originales al tribunal de origen para que allí las partes planteen y se resuelva todo lo concerniente a la liquidación final del importe y pago a los agentes hípicos de la comisión del 10% del valor total de todas las apuestas de dupleta o quiniela jugadas en sus respectivas agencias desde el 4 de abril de 1962 hasta el 9 de febrero de 1965.*