
Versión para imprimir

| | |
|---|---|
| Wilfredo Calderón Otero<br>        Recurrido<br><br>                v.<br><br>Corporación del Fondo del Seguro del Estado<br>        Peticionario | Certiorari<br><br>2011 TSPR 48<br><br>181 DPR \_\_\_\_ |
| Wilfredo Calderón Otero<br>        Peticionario<br><br>                v.<br><br>Corporació     n del Fondo del Seguro del Estado<br>        Recurrido | |

Número del Caso: CC        - 2009 - 625 cons. CC       - 2010 - 189

Fecha: 29 de marzo de 2011

Tribunal de Apelaciones:

            Región Judicial de San Juan Panel III

Juez Ponente:
CC- 2009 - 625                Hon. Héctor Cordero V          ázquez

Jueza Ponente
CC- 2010 - 189                Hon. Luisa Colom García
_____
CC- 2009 - 625
Abogado s   de la Parte Peticionaria:

                        Lcdo. Pablo B. Rivera Díaz
                        Lcda. Nelcy A. Rivera de León

Abogado   de la Parte Recurrida:

                        Lcdo. Ramón Rodríguez Meléndez


CC- 2010189
Abogado de la Parte Peticionaria:

                        Lcdo. Ramón L. Rodríguez Meléndez

Abogados de la Parte Recurrida:

                        Lcdo. Pablo B. Rivera Díaz

Materia:        Revisión Administrativa

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a                la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

```
Wilfredo Calderón Otero   *
                          *
   Recurrido              *
                          *
        Vs.               *          CC-2009-0625
                          *
                          *
Corporación del Fondo del *
Seguro del Estado         *
                          *
   Peticionario           *
_____ *          Cons. con
                          *
Wilfredo Calderón Otero   *
                          *
   Peticionario           *
                          *
        Vs.               *          CC-2010-0189
                          *
Corporación del Fondo del *
Seguro del Estado         *
                          *
   Recurrido              *
**************************
```

Opinión del Tribunal emitida por el Juez presidente señor HERNÁNDEZ DENTON

San Juan, Puerto Rico, a 29 de marzo de 2011.

Los dos recursos de epígrafe nos dan la oportunidad de resolver una controversia que se encuentra en dos procesos disciplinarios diferentes. Por un lado, en el recurso CC-2009-0625, debemos determinar si erró el Tribunal de Apelaciones al revocar una decisión del Administrador de la Corporación del Fondo del Seguro del Estado (C.F.S.E.) mediante la cual se suspendió al Sr. Wilfredo Calderón Otero de empleo y sueldo por el término de treinta días laborables. Por otro lado, en el recurso CC-2010-0189, debemos resolver si obró correctamente el foro apelativo intermedio al

confirmar un dictamen de la Junta de Apelaciones de la C.F.S.E. en el cual, a su vez, se denegó una apelación presentada por el señor Calderón Otero a causa de su cesantía en el empleo.

Específicamente, debemos determinar si se le violó el debido proceso de ley al señor Calderón Otero al aplicársele un Manual de Medidas Disciplinarias de un Reglamento derogado al momento del procesamiento disciplinario llevado en su contra. Por entender que no hubo violación al debido proceso de ley por los fundamentos que expondremos a continuación, se revoca la sentencia del Tribunal de Apelaciones en el recurso CC-2009-0625 y se confirma la sentencia del foro apelativo intermedio en el caso CC-2010-0189.

I.

A.

Los hechos que dieron base al recurso CC-2009-0625 son los siguientes. El 13 de mayo de 2004, el señor Calderón Otero, quien ocupaba el puesto de Supervisor de la Sección de Reembolsos de Gastos de Primas de la C.F.S.E., recibió una comunicación escrita del Administrador de dicha entidad gubernamental mediante la cual se le notificó la intención de suspenderlo de empleo y sueldo por el término de treinta días laborables. Asimismo, se le informó al señor Calderón Otero sobre su derecho a solicitar una vista informal para esbozar sus argumentos de defensa y presentar prueba a su favor. Específicamente, mediante dicha notificación se le imputó al señor Calderón Otero faltarle el respeto e intentar minar la

autoridad de sus supervisores, incluyendo al Sr. Jorge L. Martínez, Director de Finanzas, entre otros, y que, como consecuencia, afectó el ambiente saludable que debe prevalecer en el lugar de trabajo.[1]

Posteriormente, el 17 de junio de 2004, se celebró la correspondiente vista informal peticionada ante un Oficial Examinador. El 27 de agosto de ese año, dicho Oficial Examinador emitió su informe y recomendó la suspensión del señor Calderón Otero por el término de treinta días laborables. El Administrador de la C.F.S.E. le informó al empleado su intención de confirmar la medida disciplinaria antes referida, por lo que el señor Calderón Otero estuvo suspendido de empleo y sueldo desde el 24 de septiembre de 2004 hasta el 9 de noviembre del mismo año.

Inconforme con tal determinación, el señor Calderón Otero apeló la decisión de la C.F.S.E. ante la Junta de Apelaciones de dicha entidad (Junta). Después del descubrimiento de prueba, la vista evidenciaria comenzó el 21 de mayo de 2006, y el caso quedó sometido ante la consideración de la Junta el 30 de enero de 2008. El 20 de noviembre de ese año, la Junta confirmó la medida disciplinaria proferida y, además, concluyó que el señor Calderón Otero no llena los requisitos

---

[1] Según surge del expediente, al señor Calderón Otero se le informó que, el 27 de agosto de 2003, usó un tono irrespetuoso para dirigirse hacia el Director de Finanzas, y que cuestionó su autoridad e indicó que no aceptaría sus consejos. De igual forma, se le acusó de haber utilizado lenguaje obsceno en el lugar de trabajo y la comisión de varios errores en la ejecución de tareas relacionadas con la utilización de códigos incorrectos para las cuentas que maneja.

y criterios de productividad, eficiencia, orden y disciplina que deben prevalecer en el servicio público, según el Art. 11, Sec. 11.2 del Reglamento de Personal de 1983 y Sec. 15.2 del Reglamento de Personal de 2000.

Aún insatisfecho, el señor Calderón Otero acudió ante el Tribunal de Apelaciones y, en esencia, alegó que erró la Junta al confirmar la referida medida disciplinaria por ser ésta *ultra vires*. Según el señor Calderón Otero, el Administrador de la C.F.S.E. incumplió con su deber ministerial de establecer un manual de medidas disciplinarias y orientarlo sobre su contenido y alcance. Argumentó, asimismo, que el Administrador en su notificación no le imputó una violación a ninguna regla de conducta vigente al momento de los hechos y que éste no tiene la facultad de suspender de empleo y sueldo a un empleado antes de ventilar un caso en su fondo, salvo en caso de que sea acusado de delito grave o que conlleve depravación moral.

Luego de ponderar los referidos errores, el foro apelativo intermedio revocó la decisión de la Junta. En esencia, concluyó que se le violó el debido proceso de ley en su fase procesal al señor Calderón Otero, pues no se le informó debidamente sobre las reglas disciplinarias que debía respetar en el lugar de trabajo. Esto, pues el 11 de enero de 2000, el otrora Administrador de la C.F.S.E., el Sr. Juan A. Ramírez, promulgó un nuevo Reglamento de Personal, Reglamento Núm. 6226, mediante el cual le correspondía a dicha agencia establecer un manual de medidas disciplinarias que le

permitiera a todo empleado conocer el alcance de la conducta que debían observar y las acciones disciplinarias aplicables ante el incumplimiento de dicho cuerpo normativo.

Al momento de ocurrir los hechos sancionados, sin embargo, no se había promulgado un nuevo manual de medidas disciplinarias, por lo que, según el Tribunal de Apelaciones, la C.F.S.E. carecía de un cuerpo normativo disciplinario mediante el cual se pudiese sancionar a algún empleado. Por lo tanto, el foro apelativo intermedio entendió que el manual de medidas disciplinarias contenido en el Reglamento de Personal de 1983 había sido derogado, puesto que dicho reglamento quedó derogado por completo ante la entrada en vigor del Reglamento de Personal de 2000.

Insatisfecha, la C.F.S.E. acude ante nos y, esencialmente, alega que erró el Tribunal de Apelaciones al determinar que se le violó el debido proceso de ley al señor Calderón Otero al no habérsele notificado sobre las normas disciplinarias vigentes al momento de los hechos sancionados. Esto, pues, arguye que el Reglamento de Personal de 2000 no derogó totalmente al Reglamento de Personal de 1983 y, en específico, que el manual de medidas disciplinarias contenido en este último estaba vigente al momento de los hechos sancionados en este caso, por lo que la actuación de la C.F.S.E. no fue *ultra vires*. Así, decidimos, mediante Resolución de 29 de enero de 2010, expedir el recurso presentado por la C.F.S.E. Luego de presentados los correspondientes alegatos de ambas partes, el 11 de mayo de

2010, el caso de autos quedó sometido para su adjudicación en los méritos.

B.

Posterior a los hechos que provocaron la suspensión por treinta días laborables del señor Calderón Otero, la C.F.S.E. le impuso, por otros hechos ocurridos en el 2005, la medida disciplinaria de destitución de su empleo. Dicha determinación fue oportunamente apelada hasta llegar ante nuestra consideración. Pasamos a relatar los hechos que provocaron el recurso CC-2010-0189 que, esencialmente, contiene la misma controversia que el referido anteriormente.

El 24 de octubre de 2005, el Lcdo. Salvador Rovira Rodríguez, el otrora Administrador de la C.F.S.E., le notificó al señor Calderón Otero, entonces Supervisor de Cuentas a Pagar por Facturas de Servicios Administrativos, la intención de destituirlo de su empleo. Ello, pues alegó que el comportamiento del señor Calderón Otero era irrespetuoso, amenazante, desordenado e inapropiado con sus compañeros y compañeras de trabajo.

En específico, los hechos que dieron paso a la acción disciplinaria comenzaron en mayo de 2005, cuando el señor Calderón Otero entregó un permiso oficial para asistir a la Oficina del Procurador del Ciudadano sin presentar prueba de su comparecencia. Ese mismo mes, el peticionario le profirió palabras ofensivas a una empleada en presencia de otro empleado. Posteriormente, en octubre de 2005, se alega que el señor Calderón Otero les dijo palabras soeces, por teléfono y

personalmente, a varios empleados de la C.F.S.E., incluyendo al Sr. Edgardo González Domínguez, entonces Subdirector de Presupuesto de dicha entidad.

A raíz de estos hechos, la C.F.S.E. le imputó al señor Calderón Otero la violación de cinco incisos de la Sec. 11.8, correspondiente a las medidas disciplinarias contenidas en el Art. 11 del Reglamento de Personal de 1983.[2] Por tal razón, el 24 de octubre de 2005, se le envió una misiva al señor Calderón Otero en la cual se le informó sobre la intención de la C.F.S.E. de destituirlo de su empleo, así como de su derecho a solicitar una vista informal ante un Oficial Examinador dentro del término de cinco días laborables a partir del recibo de dicha comunicación. Oportunamente, el señor Calderón Otero solicitó la correspondiente vista informal, que se celebró el 20 de diciembre de 2006. Luego de ello, el entonces Administrador de la C.F.S.E., Lcdo. Carlos

---

[2] Los cinco incisos del Manual de Medidas Disciplinarias contenidos en el Reglamento de 1983 son los siguientes:

> 5. Conducta desordenada en predios del F.S.E. tales como juegos de mano, bromas pesadas, intimidar o abusar de otros empleados y palabras obscenas.
> 7. Cometer o provocar agresión, riña o desorden dentro del F.S.E. (se tomará en consideración si es o no en horas laborales y cómo se afectan adversamente la moral, la productividad o la disciplina.
> 9. Conducta impropia dentro o fuera de tal naturaleza que afecte el buen nombre, refleje el descrédito o ponga en dificultad al F.S.E. o a cualquier agencia o dependencia del Gobierno de Puerto Rico.
> 21. Insubordinación (negarse a acatar órdenes, insolencia, o comportamiento impropio).
> 38. Insubordinación o falta de respeto a un supervisor.

J. Ruiz Nazario, notificó la destitución del señor Calderón Otero por los cargos imputados en la carta de intención de destitución.

El 28 de febrero de 2007, el señor Calderón Otero presentó una apelación ante la Junta, foro que declaró no ha lugar el recurso apelativo de dicho empleado. Inconforme con tal determinación, el señor Calderón Otero acudió ante el Tribunal de Apelaciones y, esencialmente, alegó los mismos errores que había argüido cuando por primera vez acudió ante el foro apelativo intermedio a raíz de su suspensión de empleo y sueldo por treinta días laborables. En síntesis, el empleado alegó que se le violó el debido proceso de ley en su fase procesal al aplicársele un Reglamento de Personal completamente derogado, cuando el Administrador de la C.F.S.E. incumplió con su deber ministerial de promulgar un nuevo manual de medidas disciplinarias a la luz del Reglamento de Personal de 2000. Además, adujo que el Administrador de la C.F.S.E. había incurrido en incuria, por la dilación en los procesos, y que le impuso una destitución aún cuando no procedía pues era una primera ofensa.

El Tribunal de Apelaciones, sin embargo, confirmó el dictamen de la Junta. Esto, pues entendió que no hubo violación al debido proceso de ley al aplicar el manual de medidas disciplinarias al amparo del Reglamento de Personal de 1983 al caso de autos, porque éste no era incompatible con las disposiciones del Reglamento de Personal de 2000, vigente al momento de ocurrir los hechos por los cuales el señor

Calderón Otero fue destituido de su empleo. Esta determinación se basa en la conclusión de que el Reglamento de Personal de 2000 derogó parcialmente el Reglamento de Personal de 1983, y no completamente, como alegó el señor Calderón Otero. Por lo tanto, la C.F.S.E. cumplió con los requisitos mínimos de debido proceso de ley al sancionar al señor Calderón Otero y destituirlo de su empleo.

Aún insatisfecho, el señor Calderón Otero acude ante nos y alega que erró el foro apelativo intermedio al confirmar la determinación de la Junta. Específicamente, se basa en exactamente los mismos errores que le imputó a la Junta cuando acudió ante el Tribunal de Apelaciones. Así, el 27 de agosto de 2010, le concedimos veinte días a la C.F.S.E. para que compareciera y mostrara causa por la cual no se deba revocar la sentencia recurrida dictada por el foro apelativo intermedio. Oportunamente, la C.F.S.E. presentó su alegato en oposición al recurso de *certiorari* presentado por el señor Calderón Otero.

Contando con la comparecencia de ambas partes, expedimos el recurso y procedemos a adjudicarlo en los méritos. Como la controversia neurálgica de los dos recursos de epígrafe antes reseñados es la misma, procedemos, además, a consolidarlos y resolverlos conjuntamente, pues la adjudicación de uno afecta directamente la adjudicación del otro.

II.

A.

Reiteradamente hemos expresado que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. Asoc. Fcias. v. Caribe Specialty et al. II, res. el 23 de septiembre de 2010, 2010 T.S.P.R. 204; Otero v. Toyota, 163 D.P.R. 716, 727 (2005); véase, además, Pacheco v. Estancias, 160 D.P.R. 409 (2003). Dicha deferencia tiene su fundamento último en que son los organismos administrativos los que cuentan con el conocimiento experto y con la experiencia especializada sobre los asuntos que les son encomendados. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004); González Santiago v. F.S.E., 118 D.P.R. 11 (1986). Por tal razón, es un principio firmemente establecido que las decisiones de las agencias administrativas tienen una presunción de legalidad y corrección que deben respetar los tribunales mientras la parte que las impugna no produzca suficiente evidencia para derrotarlas. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131 (1998).

No obstante, esa deferencia no significa que hayamos renunciado nuestra función revisora en instancias apropiadas y meritorias, pues en el supuesto de que la agencia administrativa hubiese errado al aplicar la ley, dicha actuación sería inválida. Fuertes y otros v. A.R.Pe., 134 D.P.R. 947, 953 (1993); Del Rey v. J.A.C.L., 107 D.P.R. 384, 355 (1978). Asimismo, la Sec. 4.5 de la Ley de Procedimiento

Administrativo Uniforme del Estado Libre Asociado de Puerto

Rico (L.P.A.U.), 3 L.P.R.A. sec. 2175, delimita la facultad

de los tribunales para revisar decisiones administrativas. A

tales efectos, nos dice la referida disposición que:

> El tribunal podrá conceder el remedio apropiado si determina que el recurrente tiene derecho a un remedio.
>
> Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo.
>
> Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal. *Íd.*

De igual manera, al interpretar la referida sección de la

L.P.A.U. sobre las determinaciones de hecho, el criterio bajo

el cual un tribunal debe revisar las determinaciones e

interpretaciones de una agencia administrativa es el criterio

de razonabilidad. Rebollo v. Yiyi Motors, *supra*, pág. 76. Por

esta razón, y en armonía con la finalidad perseguida, la

revisión judicial de dictámenes administrativos debe

limitarse a determinar si la agencia actuó arbitraria o

ilegalmente, o en forma tan irrazonable que su actuación

constituya un abuso de discreción. JP Plaza Santa Isabel v.

Cordero Badillo, res. el 14 de octubre de 2009, 2009 T.S.P.R.

160; Oficina del Comisionado v. Integrand Assurance Comp.,

res. el 22 de mayo de 2008, 2008 T.S.P.R. 94; Fuertes y otros

v. A.R.Pe., *supra*, pág. 953 (1993); Murphy Bernabe v.

Tribunal Superior, 103 D.P.R. 692, 699 (1975).

No obstante lo anterior, este Tribunal ha señalado que

las conclusiones de derecho de las agencias administrativas,

distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. 3 L.P.R.A. sec. 2175; véase, además, Miranda v. C.E.E., 141 D.P.R. 775 (1996). Esto, sin embargo, no significa que al ejercer su facultad revisora, el tribunal pueda descartar ligeramente las conclusiones e interpretaciones de la agencia gubernamental, sustituyendo el criterio de ésta por el propio. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269 (2000); véase, además, D. Fernández Quiñones, Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Colombia, Forum, 2001, págs. 557-566.

Claro está, las conclusiones de derecho de la agencia administrativa deben estar sujetas al mandato de la ley y, en la medida en que lo estén, deben ser sostenidas por el tribunal mediante su función revisora. Íd., pág. 283; Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966). De igual manera, hemos determinado que en casos marginales o dudosos, la interpretación de un estatuto por parte de la agencia facultada para velar por su cumplimiento merece gran deferencia, aun cuando dicha interpretación no sea la única. P.R.T.C. v. J. Reg. Tel. de P.R., supra, pág. 283; De Jesús v. Depto. Servicios Sociales, 123 D.P.R. 407, 418 (1989). Dicha interpretación, además, debe ajustarse al fundamento racional o finalidad principal de la ley y de la política pública que la inspiran. Ind. Cortinera Inc. v. P.R.

Telephone Co., 132 D.P.R. 654, 661 (1993); Com. Seguros P.R. v. Gen. Accident Ins. Co., 132 D.P.R. 543 (1993).

Por otro lado, cuando analizamos un planteamiento de violación al debido proceso de ley en su vertiente procesal, debemos determinar, primeramente, si existe un derecho propietario o libertario merecedor de la correspondiente protección constitucional. Domínguez Castro et al. v. E.L.A. I., res. el 2 de febrero de 2010, 2010 T.S.P.R. 11; U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998). Así, la Constitución del Estado Libre Asociado de Puerto Rico dispone que "ninguna persona será privada de su propiedad o libertad sin un debido proceso de ley". Art. II, Sec. 7, Const. E.L.A., L.P.R.A. Tomo 1, ed. 2008, pág. 296. Por su parte, la Constitución de los Estados Unidos de América cobija el derecho al debido proceso de ley en sus Enmiendas V y XIV. Enm. V y XIV, Const. EE. UU., L.P.R.A., ed. 2008. En su dimensión procesal, el debido proceso de ley le impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y de propiedad de la persona se haga a través de un procedimiento que sea justo y equitativo. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 616; Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992).

En nuestra jurisdicción, para que se active la referida protección constitucional que otorga este derecho en su vertiente procesal, es necesario que exista un interés individual de libertad o propiedad. Vázquez González v. Mun. de San Juan, res. el 9 de abril de 2010, 2010 T.S.P.R. 50;

Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987). Una vez cumplida dicha exigencia, hemos adoptado y desarrollado determinados factores que deben analizarse para determinar si un procedimiento administrativo cumple con los requisitos constitucionales del debido proceso de ley. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 616. A saber, estos son: (1) el interés privado que puede resultar afectado por la actuación oficial; (2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido en la acción sumaria, incluso la función de que se trata y los cargos fiscales y administrativos que conllevaría imponer otras garantías procesales. Domínguez Castro et al. v. E.L.A. I., supra; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982); Mathews v. Eldridge, 424 U.S. 319 (1976).

Asimismo, desde hace mucho hemos reconocido que un empleado de carrera tiene un interés propietario protegido sobre su empleo, ya sea protegido por ley o cuando exista una expectativa de continuidad sobre el mismo. Orta v. Padilla Ayala, 131 D.P.R. 227 (1992); Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990); Board of Regents v. Roth, 408 U.S. 565 (1972). De igual forma, acogimos la norma federal que reconoció el derecho de aquellos empleados públicos poseedores de un interés propietario en sus puestos a ser notificados de los cargos en su contra y a la celebración de una vista informal previa a su despido. U. Ind. Emp. A.E.P.

v. A.E.P., supra, pág. 617; Cleveland Board v. Loudermill, 470 U.S. 532 (1985).

A tales efectos, hemos expresado que los requisitos para garantizar el debido proceso de ley en su modalidad procesal son: (1) la notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) tener asistencia de abogado, y (6) que la decisión se base en el récord o expediente del caso. Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 889 (1993); véase, además, Fernández Quiñones, op. cit., págs. 344-359.

Al amparo de estos preceptos, procedemos a analizar si la aplicación del manual de medidas disciplinarias del Reglamento de Personal de 1983 de la C.F.S.E. violó el derecho al debido proceso que le asiste al señor Calderón Otero en el caso de autos.

B.

Previo a comenzar con el análisis sobre las disposiciones pertinentes tanto del Reglamento de Personal de 1983 como de 2000, nos vemos forzados a delimitar el horizonte hermenéutico mediante el cual vamos a realizar la correspondiente interpretación reglamentaria.

Para ello, es imperativo señalar que el Art. 5 de nuestro Código Civil dispone que "[l]as leyes sólo se derogarán por otras leyes posteriores; y no prevalecerá contra su observancia o desuso, la costumbre, o la práctica en

contrario. Las leyes pueden ser derogadas, o entera o parcialmente, por otras leyes". 31 L.P.R.A. sec. 5. De igual manera, el Art. 6 del Código Civil establece que "[l]a derogación es, o expresa o tácita. Es expresa cuando se declara literalmente por una ley posterior; es tácita cuando la nueva ley contiene preceptos que son o contrarios o irreconciliables con los de la anterior ley. La derogación de una ley derogatoria no restablece la primitiva ley derogada". 31 L.P.R.A. sec. 6.

Sobre la aplicación de lo dispuesto en el Art. 6 del Código Civil, *supra*, este Tribunal ha decidido que, por analogía, aplicará a órdenes, resoluciones y **reglas y reglamentos de una agencia administrativa**. Rosario Mercado v. San Juan Racing Assn., 94 D.P.R. 634, 645 (1967); Reyes v. Torres, 65 D.P.R. 821 (1946). Teniendo esto en mente, es pertinente determinar si el Reglamento de Personal de 2000 derogó por completo todas las disposiciones contenidas en el Reglamento de Personal de 1983, o si sólo lo derogó parcialmente.

El Reglamento de Personal para los Empleados Gerenciales de la C.F.S.E. vigente al momento de ocurrir los hechos que dieron paso a este caso fue aprobado el 11 de enero de 2000, al amparo de la Ley Núm. 45 de 18 de abril de 1935, conocida como la Ley de Sistema de Compensación por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 *et seq*. Dicho Reglamento entró en vigor inmediatamente después de su aprobación. En su Sec. 15.7, dicho reglamento dispone que "[e]l Administrador

establecerá, mediante un Manual de Medidas Disciplinarias, las reglas de conducta que deben observar los empleados y las acciones correctivas y disciplinarias aplicables a dichas reglas". Por lo tanto, dicha disposición faculta y obliga al Administrador de la C.F.S.E. a aprobar un cuerpo normativo de reglas que regule la conducta que deberán observar los empleados vinculados por el referido reglamento, y las correspondientes acciones correctivas y disciplinarias aplicables ante el incumplimiento de dichas reglas. No obstante, no está en controversia que al momento de ocurrir los hechos que provocaron el caso de autos el Administrador de la C.F.S.E. no había aprobado un nuevo manual de medidas disciplinarias.

Asimismo, dicha Sec. 15.7 también le impone a todo supervisor de área orientar a sus empleados sobre "las reglas de conducta que imperan en la Corporación. La violación de dichas normas dará base para la toma de acción correctiva o disciplinaria". Posteriormente, el último párrafo de dicha sección nos señala que "[l]as acciones disciplinarias son las reprimendas escritas, la suspensión de empleo y sueldo y la destitución de parte del Administrador…". Por ende, el Reglamento de Personal de 2000 provee las debidas disposiciones reglamentarias para que el Administrador de la C.F.S.E. lleve a cabo acciones disciplinarias ante la violación de las reglas que rigen la conducta de los empleados en el ámbito laboral.

Por otro lado, el Art. 23 del Reglamento de Personal de 2000 preceptúa que **"[p]or la presente queda derogada cualquier otra norma, regla o reglamento que esté en conflicto con las disposiciones de este Reglamento"** (Énfasis suplido). Así, pues, si analizamos esta cláusula derogatoria bajo el palio del Art. 5 del Código Civil, *supra*, es forzoso concluir que existe una derogación parcial y expresa, pero solamente sobre toda norma, regla o reglamento que esté en conflicto o sea contrario a las disposiciones del referido Reglamento.

Ante la ausencia de un nuevo manual de medidas disciplinarias aprobado a raíz de la entrada en vigor del Reglamento de Personal de 2000, no vemos que el Manual de Medidas Disciplinarias aprobado en 1983 sea incompatible o esté en conflicto con las disposiciones antes mencionadas del Reglamento de Personal de 2000 ni con dicho cuerpo normativo en su totalidad. Más aún, entendemos que dicho Manual de Medidas Disciplinarias del Reglamento de 1983 es compatible con el esquema de sanciones disciplinarias preceptuado en el Reglamento de Personal de 2000. Por esta razón, entendemos que el Reglamento de Personal de 2000 derogó parcialmente el Reglamento de Personal de 1983. A saber, que sólo se derogaron aquellas disposiciones incompatibles o incongruentes con el Reglamento de Personal de 2000.

Como vimos, el Manual de Medidas Disciplinarias de 1983 es compatible con el reglamento en vigor al momento de ocurrir los hechos que dieron base a estos casos. Decidir lo

contrario, sería determinar que desde la aprobación del Reglamento de Personal de 2000 hasta que se aprobara un nuevo manual de medidas disciplinarias nuevo, no se podía imponer sanción disciplinaria alguna sin estar violando el debido proceso de ley en su vertiente procesal, lo que sería incongruente con las disposiciones anteriormente referidas del propio Reglamento de Personal de 2000.

A la luz estos preceptos, pasemos a resolver el caso de autos.

III.

En este caso, el señor Calderón Otero, según el derecho anteriormente expuesto, ostenta un derecho propietario sobre su empleo y fuente de ingresos. Por esta razón, es imperativo que, al activarse las salvaguardas constitucionales de debido proceso de ley en su fase procesal, se le hayan honrado las garantías mínimas durante el proceso disciplinario llevado en su contra. De lo contrario, la C.F.S.E. habrá actuado *ultra vires* y, por ende, su actuación debería considerarse nula al privar al empleado de su interés propietario sin las referidas protecciones constitucionales mínimas.

En el primer recurso, mediante el cual revisamos la procedencia de una suspensión de empleo y salario por un periodo de treinta días, el Tribunal de Apelaciones concluyó que dicha medida disciplinaria no contó con las garantías mínimas del debido proceso de ley, pues al momento de ocurrir los hechos que dieron paso al proceso disciplinario la C.F.S.E. no contaba con un manual de medidas disciplinarias

vigente. Esto, pues entendió que el Reglamento de Personal de 2000 derogó por completo el Reglamento de Personal de 1983 que facultó la creación del Manual de Medidas Disciplinarias de ese mismo año. Igual interpretación al respecto esboza el señor Calderón Otero en su alegato.

Por otro lado, en el segundo recurso traído ante nuestra consideración, en el cual se cesanteó al señor Calderón Otero, el foro apelativo intermedio decidió todo lo contrario. En esencia, dicho foro concluyó que el Reglamento de Personal de 2000 no derogó completamente el Reglamento de Personal de 1983, lo que tuvo como efecto que, al no aprobarse ningún manual de medidas disciplinarias al amparo del Reglamento de Personal de 2000, el Manual de Medidas Disciplinarias de 1983 fuera el aplicable al momento de los hechos en este caso. Esta interpretación nos es más plausible según el derecho expuesto.

Como se mencionó anteriormente, el Manual de Medidas Disciplinarias de 1983 es compatible con las disposiciones del Reglamento de Personal de 2000. Este último faculta y obliga al Administrador de la C.F.S.E. a adoptar un nuevo manual de medidas disciplinarias, lo que, al ocurrir los eventos que provocaron el proceso disciplinario en el caso de autos, no había sucedido. Al contener el Reglamento de Personal de 2000 una cláusula derogatoria que parcialmente derogó aquellas disposiciones incompatibles con dicho reglamento contenidas en el Reglamento de Personal de 1983, es forzoso concluir que al momento de ocurrir los hechos de

este caso el Manual de Medidas Disciplinarias de 1983 estaba vigente. Determinar lo contrario, no sólo sería ilógico en tanto el Reglamento de Personal de 2000 provee un mecanismo de proceso disciplinario o correctivo que no contaría con reglas disciplinarias, sino que tendría la consecuencia de privarle al Administrador de la C.F.S.E. de un procedimiento mediante el cual se discipline a un empleado. Ello, en esencia, conllevaría que no se podría suspender o cesantear, como en este caso, a ningún empleado o empleada de la C.F.S.E., aun cuando el Reglamento de Personal de 2000 contiene un procedimiento correctivo o disciplinario.

Determinado que al momento de ocurrir los hechos que dieron paso al proceso disciplinario impugnado regía el Manual de Medidas Disciplinaras de 1983, procedemos a analizar si se cumplieron con las demás garantías mínimas al privarle al señor Calderón Otero de su interés propietario sobre su empleo.

Luego de varias cartas de amonestación por su desempeño en el ámbito laboral, el 13 de mayo de 2004, el señor Calderón Otero recibió una comunicación escrita del Administrador de la C.F.S.E. en la cual se le notificó la intención de la agencia de suspenderlo de empleo y sueldo por un término de treinta días. Dicha misiva contó con la notificación al empleado sobre los hechos específicos que provocaron el comienzo del proceso disciplinario. Además, se le notificó de su derecho a solicitar, en el plazo de cinco días a partir de la notificación, una vista informal para

impugnar los cargos presentados en su contra. El 17 de junio de 2004, se celebró la correspondiente vista ante un Oficial Examinador, quien el 27 de agosto de ese año rindió un informe en el cual recomendó la suspensión del señor Calderón Otero por el plazo de treinta días laborables de empleo y sueldo. El 10 de septiembre de 2004, el Administrador de la C.F.S.E. le informó al señor Calderón Otero su decisión de confirmar dicha medida disciplinaria.

Ante este cuadro fáctico, entendemos que la agencia administrativa cumplió con las garantías mínimas de notificación sobre el proceso y los cargos presentados en contra del empleado; proceso ante un juez imparcial, como lo fue el Oficial Examinador durante una vista informal; la oportunidad de ser oído y presentar prueba a su favor durante la referida vista; con el derecho a abogado y con una determinación a base del expediente del caso. Por lo tanto, entendemos que la acción del Administrador de la C.F.S.E. al suspender al señor Calderón Otero no fue *ultra vires* ni irrazonable, por lo que, en este caso, debemos darle deferencia al respecto.

De otra parte, luego de cumplido el período de suspensión de treinta días, el 24 de octubre de 2005, el señor Calderón Otero recibió de parte del Administrador de la C.F.S.E. una notificación escrita sobre la intención de destituirlo de su empleo por los cargos esbozados anteriormente en los hechos de este caso. Además, dicha notificación le informó al señor Calderón Otero sobre su derecho a solicitar una vista

informal ante un Oficial Examinador. Celebrada la vista y rendido el correspondiente informe del Oficial Examinador recomendando la destitución del empleado, el 5 de febrero de 2007, el Administrador de la C.F.S.E. le notificó al señor Calderón Otero su destitución, además de su derecho a apelar dicha determinación.

Al igual que cuando se le suspendió por treinta días de empleo y sueldo, al señor Caldero Otero se le respetaron las garantías mínimas del debido proceso de ley. A saber, dicho proceso contó con una notificación escrita mediante la cual se especificaron los cargos por los cuales se le disciplinaba y los hechos que provocaron la acción correctiva de la agencia administrativa. Además, se le notificó sobre su derecho a una vista informal frente a un Oficial Examinar que fungiría como juez imparcial en el proceso. En dicha vista el señor Calderón Otero contó con el derecho a abogado y a presentar e impugnar prueba. A base de la prueba desfilada, el Oficial Examinador rindió un informe mediante el cual recomendó la destitución del empleado, recomendación que acogió el Administrador de la C.F.S.E. y así se lo notificó al señor Calderón Otero. En dicha misiva, además, se le informó de su derecho a apelar tal determinación ante la Junta.

Examinado el proceder de la C.F.S.E., entendemos que éste se basó en un proceso que garantizó los preceptos mínimos del debido proceso de ley de rango constitucional. De igual manera, entendemos que las determinaciones disciplinarias,

tanto de suspensión como de destitución, se basaron en prueba sustancial que razonablemente sostienen la decisión de la C.F.S.E. en el caso de autos. Por lo tanto, no se extralimitó en sus funciones el Administrador de la C.F.S.E. al presentarle cargos al señor Calderón Otero a base del Manual de Medidas Disciplinaras de 1983 ni al tomar las acciones disciplinarias de suspensión ni destitución según la prueba que surge del expediente.

IV.

Por los fundamentos antes expuestos, se revoca la sentencia del Tribunal de Apelaciones en el caso CC-2009-0625. Asimismo, se expide el auto de *certiorari* en el recurso CC-2010-0189 y se confirma la sentencia del foro apelativo intermedio.

Se dictará Sentencia de conformidad.


Federico Hernández Denton
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Wilfredo Calderón Otero   *
                              *
  Recurrido                *
                              *
      Vs.                *                  CC-2009-0625
                              *
Corporación del Fondo del*
Seguro del Estado       *
                              *
  Peticionario          *
                              *                Cons. con
_____  *
                              *
Wilfredo Calderón Otero  *
                              *
  Peticionario          *
                              *
      Vs.                *                  CC-2010-0189
                              *
Corporación del Fondo del*
Seguro del Estado       *
                              *
  Recurrido                *
************************

SENTENCIA

San Juan, Puerto Rico, a 29 de marzo de 2011.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia del Tribunal de Apelaciones en el caso CC-2009-0625. Asimismo, se expide el auto de *certiorari* en el recurso CC-2010-0189 y se confirma la sentencia del foro apelativo intermedio.

Lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Rodríguez Rodríguez concurre con el resultado sin opinión escrita. El Juez Asociado señor Rivera García no interviene.

                           Aida I. Oquendo Graulau
                      Secretaria del Tribunal Supremo