El Juez Presidente Señor Hernández Denton
emitió la opi-nión del Tribunal.
Los dos recursos de epígrafe nos dan la oportunidad de resolver una controversia que se encuentra en dos procesos disciplinarios diferentes. Por un lado, en el recurso CC-2009-0625, debemos determinar si erró el Tribunal de Ape-laciones al revocar una decisión del Administrador de la Corporación del Fondo del Seguro del Estado (C.F.S.E.) mediante la cual se suspendió al Sr. Wilfredo Calderón Otero de empleo y sueldo por el término de treinta días laborables. Por otro lado, en el recurso CC-2010-0189, de-bemos resolver si obró correctamente el foro apelativo in-termedio al confirmar un dictamen de la Junta de Apela-ciones de la C.F.S.E. (Junta) en el cual, a su vez, se denegó una apelación que presentó el señor Calderón Otero a causa de su cesantía en el empleo.
Específicamente, debemos determinar si se le violó el debido proceso de ley al señor Calderón Otero al aplicár-sele el Manual de Medidas Disciplinarias de un Regla-mento que estaba derogado al momento del procesamiento disciplinario llevado en su contra. Por entender que no hubo violación al debido proceso de ley por los fundamen-tos que expondremos a continuación, se revoca la sentencia del Tribunal de Apelaciones en el recurso CC-2009-0625 y se confirma la sentencia del foro apelativo intermedio en el caso CC-2010-0189.
*390 1 — 1
A. Los hechos que fundamentaron el recurso CC-2009-0625 son los siguientes. El 13 de mayo de 2004, el señor Calderón Otero, quien ocupaba el puesto de Supervisor de la Sección de Reembolsos de Gastos de Primas de la C.F.S.E., recibió una comunicación escrita del Administra-dor de dicha entidad gubernamental mediante la cual se le notificó la intención de suspenderlo de empleo y sueldo por treinta días laborables. Asimismo, se le informó al señor Calderón Otero sobre su derecho a solicitar una vista informal para esbozar sus argumentos de defensa y presen-tar prueba a su favor. Específicamente, mediante dicha no-tificación se le imputó al señor Calderón Otero faltarle el respeto e intentar minar la autoridad de sus supervisores, incluso al Sr. Jorge L. Martínez, Director de Finanzas, en-tre otros, y que, como consecuencia, afectó el ambiente sa-ludable que debe prevalecer en el lugar de trabajo.(1)
Posteriormente, el 17 de junio de 2004, se celebró la correspondiente vista informal ante un Oficial Examinador. El 27 de agosto de ese año, dicho Oficial Exa-minador emitió su informe y recomendó la suspensión del señor Calderón Otero por treinta días laborables. El Admi-nistrador de la C.F.S.E. informó al empleado su intención de confirmar la medida disciplinaria antes referida, por lo que el señor Calderón Otero estuvo suspendido de empleo y sueldo desde el 24 de septiembre de 2004 hasta el 9 de noviembre del mismo año.
Inconforme con tal determinación, el señor Calderón Otero apeló la decisión de la C.F.S.E. ante la Junta. Des-pués del descubrimiento de prueba, la vista evidenciaría *391 comenzó el 21 de mayo de 2006 y el caso quedó sometido ante la consideración de la Junta el 30 de enero de 2008. El 20 de noviembre de ese año, la Junta confirmó la medida disciplinaria proferida y, además, concluyó que el señor Calderón Otero no llena los requisitos y criterios de pro-ductividad, eficiencia, orden y disciplina que deben preva-lecer en el servicio público, según el Art. 11, Sec. 11.2 del Reglamento de Personal de 1983, y la Sec. 15.2 del Regla-mento de Personal de 2000.
Aún insatisfecho, el señor Calderón Otero acudió ante el Tribunal de Apelaciones y, en esencia, alegó que erró la Junta al confirmar la referida medida disciplinaria porque es ultra vires. Según el señor Calderón Otero, el Adminis-trador de la C.F.S.E. incumplió con su deber ministerial de establecer un manual de medidas disciplinarias y orien-tarlo sobre su contenido y alcance. Argumentó, asimismo, que en su notificación el Administrador no le imputó una violación a ninguna regla de conducta vigente al momento de los hechos y que este no tiene la facultad de suspender de empleo y sueldo a un empleado antes de ventilar un caso en su fondo, salvo que sea acusado de delito grave o que conlleve depravación moral.
Luego de ponderar los referidos errores, el foro apela-tivo intermedio revocó la decisión de la Junta. En esencia, concluyó que se le violó el debido proceso de ley en su fase procesal al señor Calderón Otero, pues no se le informó debidamente sobre las reglas disciplinarias que debía res-petar en el lugar de trabajo. Esto, pues el 11 de enero de 2000, el otrora Administrador de la C.F.S.E., el Sr. Juan A. Ramírez, promulgó un nuevo Reglamento de Personal, Re-glamento Núm. 6226, mediante el cual le correspondía a dicha agencia establecer un manual de medidas disciplina-rias que le permitiera a todo empleado conocer el alcance de la conducta que debían observar y las acciones discipli-narias aplicables ante el incumplimiento de dicho cuerpo normativo.
*392 Al momento de ocurrir los hechos sancionados, sin embargo, no se había promulgado un nuevo manual de medi-das disciplinarias, por lo que, según el Tribunal de Apela-ciones, la C.F.S.E. carecía de un cuerpo normativo disciplinario para sancionar a sus empleados. Por lo tanto, el foro apelativo intermedio entendió que el manual de me-didas disciplinarias del Reglamento de Personal de 1983 quedó derogado por completo ante lo dispuesto en el Regla-mento de Personal de 2000.
Insatisfecha, la C.F.S.E. acude ante nos y, esencial-mente, alega que erró el Tribunal de Apelaciones al deter-minar que se le violó el debido proceso de ley al señor Cal-derón Otero porque no le notificaron sobre las normas disciplinarias vigentes al momento de los hechos sancionados. Esto, pues, arguye que el Reglamento de Personal del 2000 no derogó totalmente el Reglamento de Personal de 1983 y, en específico, que el Manual de Medidas Disciplinarias de este último estaba vigente al momento de los hechos sancionados en este caso, por lo que la actuación de la C.F.S.E. no fue ultra vires. Así, decidimos, mediante Resolución de 29 de enero de 2010, expedir el recurso que presentó la C.F.S.E. Luego de presentados los correspon-dientes alegatos de ambas partes, el 11 de mayo de 2010, el caso de autos quedó sometido para su adjudicación en los méritos.
B. Posterior a los hechos que provocaron la suspensión por treinta días laborables del señor Calderón Otero, la C.F.S.E. le impuso, por otros hechos ocurridos en el 2005, la medida disciplinaria de destitución de su empleo. Dicha determinación fue oportunamente apelada hasta llegar ante nuestra consideración. Pasamos a relatar los hechos que provocaron el recurso CC-2010-0189 que, esencial-mente, contiene la misma controversia que el referido anteriormente.
El 24 de octubre de 2005, el Ledo. Salvador Rovira Ro-dríguez, el otrora Administrador de la C.F.S.E., notificó al *393 señor Calderón Otero, entonces Supervisor de Cuentas a Pagar por Facturas de Servicios Administrativos, la inten-ción de destituirlo de su empleo. Ello, pues alegó que el comportamiento del señor Calderón Otero era irrespe-tuoso, amenazante, desordenado e inapropiado con sus compañeros y compañeras de trabajo.
En específico, los hechos que dieron paso a la acción disciplinaria comenzaron en mayo de 2005, cuando el señor Calderón Otero entregó un permiso oficial para asistir a la Oficina del Procurador del Ciudadano sin presentar prueba de su comparecencia. Ese mismo mes, el peticiona-rio le profirió palabras ofensivas a una empleada en pre-sencia de otro empleado. Posteriormente, en octubre de 2005, se alega que el señor Calderón Otero les dijo pala-bras soeces, por teléfono y personalmente, a varios emplea-dos de la C.F.S.E., incluso al Sr. Edgardo González Domín-guez, entonces Subdirector de Presupuesto de dicha entidad.
A raíz de estos hechos, la C.F.S.E. imputó al señor Cal-derón Otero la violación de cinco incisos de la Sec. 11.8, correspondiente a las medidas disciplinarias contenidas en el Art. 11 del Reglamento de Personal de 1983.(2) Por tal razón, el 24 de octubre de 2005 se le envió una misiva al señor Calderón Otero para informarle sobre la intención de la C.F.S.E. de destituirlo de su empleo, así como de su de-recho a solicitar una vista informal ante un Oficial Exami- *394 nador dentro de cinco días laborables a partir del recibo de dicha comunicación. Oportunamente, el señor Calderón Otero solicitó la correspondiente vista informal, que se ce-lebró el 20 de diciembre de 2006. Luego de ello, el entonces Administrador de la C.F.S.E., Ledo. Carlos J. Ruiz Nazario, notificó la destitución del señor Calderón Otero por los car-gos imputados en la carta de intención de destitución.
El 28 de febrero de 2007, el señor Calderón Otero pre-sentó una apelación ante la Junta, foro que declaró “no ha lugar” el recurso apelativo de dicho empleado. Inconforme con tal determinación, el señor Calderón Otero acudió ante el Tribunal de Apelaciones y, esencialmente, alegó los mis-mos errores que había argüido cuando por primera vez acudió ante el foro apelativo intermedio a raíz de su sus-pensión de empleo y sueldo por treinta días laborables. En síntesis, el empleado alegó que se le violó el debido proceso de ley en su fase procesal al aplicársele un Reglamento de Personal completamente derogado, cuando el Administra-dor de la C.F.S.E. incumplió con su deber ministerial de promulgar un nuevo manual de medidas disciplinarias acorde con el Reglamento de Personal de 2000. Además, adujo que el Administrador de la C.F.S.E. incurrió en incu-ria por dilatar los procesos e imponerle una destitución aun cuando no procedía porque era una primera ofensa.
El Tribunal de Apelaciones, sin embargo, confirmó el dictamen de la Junta. Esto, pues entendió que no hubo violación al debido proceso de ley al aplicar el Manual de Medidas Disciplinarias al amparo del Reglamento de Personal de 1983 al caso de autos, porque este no era incompatible con las disposiciones del Reglamento de Personal de 2000, vigente al momento de ocurrir los hechos por los cuales el señor Calderón Otero fue destituido de su empleo. Esta determinación se basa en la conclusión de que el Re-glamento de Personal de 2000 derogó parcialmente el Re-glamento de Personal de 1983, y no completamente, como alegó el señor Calderón Otero. Por lo tanto, la C.F.S.E. *395 cumplió con los requisitos mínimos de debido proceso de ley al sancionar al señor Calderón Otero y destituirlo de su empleo.
Aún insatisfecho, el señor Calderón Otero acude ante nos y alega que erró el foro apelativo intermedio al confir-mar la determinación de la Junta. Específicamente, se basa en exactamente los mismos errores que le imputó a la Junta cuando acudió ante el Tribunal de Apelaciones. Así, el 27 de agosto de 2010, le concedimos veinte días a la C.F.S.E. para que compareciera y mostrara causa por la cual no se debe revocar la sentencia recurrida que dictó el foro apelativo intermedio. Oportunamente, la C.F.S.E. pre-sentó su alegato en oposición al recurso de certiorari que presentó el señor Calderón Otero.
Contando con la comparecencia de ambas partes, expe-dimos el recurso y procedemos a adjudicarlo en los méritos. Como la controversia neurálgica de los dos recursos de epí-grafe antes reseñados es la misma, procedemos, además, a consolidarlos y resolverlos conjuntamente, pues la adjudi-cación de uno afecta directamente la adjudicación del otro.
II
A. Reiteradamente, hemos expresado que los dictámenes de los organismos administrativos merecen la mayor deferencia judicial. Asoc. Fcias. v. Caribe Specialty et al. II, 179 D.P.R. 923 (2010); Otero v. Toyota, 163 D.P.R. 716, 727 (2005). Véase, además, Pacheco v. Estancias, 160 D.P.R. 409 (2003). Dicha deferencia tiene su fundamento último en que son los organismos administrativos los que cuentan con el conocimiento experto y con la experiencia especializada sobre los asuntos que se les encomiendan. Rebollo v. Yiyi Motors, 161 D.P.R. 69 (2004); González Santiago v. F.S.E., 118 D.P.R. 11 (1986). Por tal razón, es un principio firmemente establecido que las decisiones de las agencias administrativas tienen una presunción de legali- *396 dad y corrección que los tribunales deben respetar mien-tras la parte que las impugna no produzca suficiente evidencia para derrotarlas. Misión Ind. P.R. v. J.P., 146 D.P.R. 64, 131 (1998).
No obstante, esa deferencia no significa que hayamos renunciado a nuestra función revisora en instancias apropiadas y meritorias, pues en el supuesto de que la agencia administrativa hubiese errado al aplicar la ley, dicha actuación sería inválida. Fuertes y otros v. A.R.Pe., 134 D.P.R. 947, 953 (1993); Del Rey v. J.A.C.L., 107 D.P.R. 348, 355 (1978). Asimismo, la See. 4.5 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico (L.P.A.U.), 3 L.P.R.A. sec. 2175, delimita la facultad de los tribunales para revisar decisiones administrativas.
El tribunal podrá conceder el remedio apropiado si deter-mina que el recurrente tiene derecho a un remedio.
Las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evi-dencia sustancial que obra en el expediente administrativo.
Las conclusiones de derecho serán revisables en todos sus aspectos por el tribunal.
De igual manera, al interpretar la referida sección de la L.P.A.U. sobre las determinaciones de hecho, el criterio de razonabilidad es el que un tribunal debe usar para revisar las determinaciones e interpretaciones de una agencia administrativa. Rebollo v. Yiyi Motors, supra, pág. 76. Por esta razón, y en armonía con la finalidad que persigue, la revisión judicial de dictámenes administrativos se debe limitar a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituye un abuso de discreción. JP, Plaza Santa Isabel v. Cordero Badillo, 177 D.P.R. 177 (2009); Comisionado Seguros P.R. v. Integrand, 173 D.P.R. 900 (2008); Fuertes y otros v. A.R.Pe., supra, pág. 953; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692, 699 (1975).
*397 No obstante lo anterior, este Tribunal ha señalado que las conclusiones de derecho de las agencias administrativas, distinto a las determinaciones de hecho, el tribunal las puede revisar en todos sus aspectos, sin sujeción a norma o criterio alguno. 3 L.P.R.A. sec. 2175. Véase, además, Miranda v. C.E.E., 141 D.P.R. 775 (1996). Esto, sin embargo, no significa que al ejercer su facultad revisora, el tribunal pueda descartar ligeramente las conclusiones e interpretaciones de la agencia gubernamental, sustituyendo el criterio de ésta por el propio. P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269 (2000). Véase, además, D. Fernández Quiñones, Derecho administrativo y Ley de Procedimiento Administrativo Uniforme, 2da ed., Bogotá, Ed. Forum, 2001, págs. 557-566.
Claro está, las conclusiones de derecho de la agencia administrativa deben estar sujetas al mandato de la ley y, en la medida en que lo estén, el tribunal las debe sostener mediante su función revisora. P.R.T.C. v. J. Reg. Tel. de P.R., supra, pág. 283; Román v. Superintendente de la Policía, 93 D.P.R. 685 (1966). De igual manera, hemos determinado que en casos marginales o dudosos, la interpretación que de un estatuto haga la agencia facultada para velar por su cumplimiento, merece gran deferencia, aun cuando dicha interpretación no sea la única. P.R.T.C. v. J. Reg. Tel. de P.R., supra, pág. 283; De Jesús v. Depto. Servicios Sociales, 123 D.P.R. 407, 418 (1989). Dicha interpretación, además, se debe ajustar al fundamento racional o a la finalidad principal de la ley y política pública que la inspiran. Ind. Cortinera Inc. v. P.R. Telephone Co., 132 D.P.R. 654, 661 (1993); Com. Seguros P.R. v. Gen. Accident Ins. Co., 132 D.P.R. 543 (1993).
Por otro lado, cuando analizamos un planteamiento de violación al debido proceso de ley en su vertiente procesal, debemos determinar, primeramente, si existe un derecho propietario o libertario que merezca la correspondiente protección constitucional. Domínguez Castro et al. v. *398 E.L.A. I, 178 D.P.R. 1 (2010); U. Ind. Emp. A.E.P. v. A.E.P., 146 D.P.R. 611 (1998). Así, la Constitución del Estado Libre Asociado de Puerto Rico dispone que “[n]inguna persona será privada de su libertad o propiedad sin [el] debido pro-ceso de ley ...”. Art. II, Sec. 7, Const. E.L.A., L.P.R.A. Tomo 1, ed. 2008, pág. 296. Por su parte, la Constitución de Es-tados Unidos de América cobija el derecho al debido pro-ceso de ley en sus Enmiendas V y XIV, Const. EE. UU., L.P.R.A., Tomo 1, ed. 2008. En su dimensión procesal, el debido proceso de ley impone al Estado la obligación de garantizar que la interferencia con los intereses de libertad y propiedad de la persona se haga a través de un procedimiento que sea justo y equitativo. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 616; Rodríguez Rodríguez v. E.L.A., 130 D.P.R. 562 (1992).
En nuestra jurisdicción, para que se active la referida protección constitucional que otorga este derecho en su vertiente procesal, es necesario que exista un interés individual de libertad o propiedad. Vázquez González v. Mun. de San Juan, 178 D.P.R. 636 (2010); Rivera Santiago v. Srio. de Hacienda, 119 D.P.R. 265 (1987). Una vez cumplida dicha exigencia, hemos adoptado y desarrollado determinados factores que se deben analizar para determinar si un procedimiento administrativo cumple con los requisitos constitucionales del debido proceso de ley. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 616. A saber, estos son: (1) el interés privado que puede resultar afectado por la actuación oficial; (2) el riesgo de una determinación errónea debido al proceso utilizado y el valor probable de garantías adicionales o distintas, y (3) el interés gubernamental protegido en la acción sumaria, incluso la función de que se trata y los cargos fiscales y administrativos que conllevaría imponer otras garantías procesales. Domínguez Castro et al. v. E.L.A. I, supra; Vélez Ramírez v. Romero Barceló, 112 D.P.R. 716 (1982); Mathews v. Eldridge, 424 U.S. 319 (1976).
*399 Asimismo, desde hace mucho hemos reconocido que un empleado de carrera tiene un interés propietario protegido sobre su empleo, ya sea protegido por ley o cuando exista una expectativa de continuidad sobre el mismo. Orta v. Padilla Ayala, 131 D.P.R. 227 (1992); Torres Solano v. P.R.T.C., 127 D.P.R. 499 (1990); Board of Regents v. Roth, 408 U.S. 564 (1972). De igual forma, acogimos la norma federal que reconoció el derecho de aquellos empleados públicos —poseedores de un interés propietario en sus puestos— a ser notificados de los cargos en su contra y a la celebración de urna vista informal previa a su despido. U. Ind. Emp. A.E.P. v. A.E.P., supra, pág. 617; Cleveland Board Education v. Loudermill, 470 U.S. 532 (1985).
A tales efectos, hemos expresado que los requisitos para garantizar el debido proceso de ley en su modalidad procesal son: (1) la notificación adecuada del proceso; (2) un proceso ante un juez imparcial; (3) la oportunidad de ser oído; (4) el derecho a contrainterrogar a los testigos y examinar la evidencia presentada en su contra; (5) el tener asistencia de abogado, y (6) que la decisión se base en el expediente del caso. Rivera Rodríguez & Co. v. Lee Stowell, etc., 133 D.P.R. 881, 889 (1993). Véase, además, Fernández Quiñones, op. cit., págs. 344-359.
Al amparo de estos preceptos, procedemos a analizar si la aplicación del Manual de Medidas Disciplinarias del Re-glamento de Personal de 1983 de la C.F.S.E. violó el dere-cho al debido proceso que le asiste al señor Calderón Otero en el caso de autos.
B. Previo a comenzar con el análisis sobre las disposi-ciones pertinentes, tanto del Reglamento de Personal de 1983 como del 2000, nos vemos forzados a delimitar el ho-rizonte hermenéuticó mediante el cual vamos a realizar la correspondiente interpretación reglamentaria.
Para ello, es imperativo señalar que el Art. 5 de nuestro Código Civil dispone que “[l]as leyes sólo se de- *400 rogan por otras leyes posteriores; y no prevalecerá contra su observancia el desuso, la costumbre, o la práctica en contrario. Las leyes pueden ser derogadas, o entera o par-cialmente, por otras leyes”. 31 L.P.R.A. see. 5. De igual manera, el Art. 6 del Código Civil establece que “[l]a dero-gación es, o expresa o tácita. Es expresa cuando se declara literalmente por una ley posterior; es tácita cuando la nueva ley contiene preceptos que son o contrarios o irre-conciliables con los de la anterior ley. La derogación de orna ley derogatoria no restablece la primitiva ley derogada”. 31 L.P.R.A. see. 6.
Sobre la aplicación de lo dispuesto en el Art. 6 del Có-digo Civil, supra, este Tribunal ha decidido que, por analo-gía, aplicará a órdenes, resoluciones, reglas y reglamentos de una agencia administrativa. Rosario Mercado v. San Juan Racing Assn., 94 D.P.R. 634, 645 (1967); Reyes v. Torres, 65 D.P.R. 821 (1946). Teniendo esto en mente, es per-tinente determinar si el Reglamento de Personal de 2000 derogó por completo todas las disposiciones contenidas en el Reglamento de Personal de 1983, o si solo lo derogó parcialmente.
El Reglamento de Personal para los Empleados Geren-ciales de la C.F.S.E., vigente al momento de ocurrir los hechos que dieron paso a este caso, se aprobó el 11 de enero de 2000, al amparo de la Ley Núm. 45 de 18 de abril de 1935, conocida como la Ley del Sistema de Compensacio-nes por Accidentes del Trabajo, 11 L.P.R.A. sec. 1 et seq. Dicho Reglamento entró en vigor inmediatamente después de su aprobación. En su Sec. 15.7, dicho reglamento dis-pone que “ [e] 1 Administrador establecerá, mediante un Manual de Medidas Disciplinarias, las reglas de conducta que deben observar los empleados y las acciones correctivas y disciplinarias aplicables a dichas reglas”. Por lo tanto, dicha disposición faculta y obliga al Administrador de la C.F.S.E. a aprobar un cuerpo de reglas que regule la con-ducta que deberán observar los empleados vinculados por *401 el referido reglamento, y las correspondientes acciones co-rrectivas y disciplinarias aplicables si incumplen con dichas reglas. No obstante, no está en controversia que al momento de ocurrir los hechos que provocaron el caso de autos el Administrador de la C.F.S.E. no había aprobado un nuevo manual de medidas disciplinarias.
Asimismo, dicha Sec. 15.7 también impone a todo supervisor de área orientar a sus empleados sobre “las reglas de conducta que imperan en la Corporación. La violación de dichas normas dará base para la toma de acción correctiva o disciplinaria”. Posteriormente, el último párrafo de dicha sección nos señala que “[l]as acciones disciplinarias son las reprimendas escritas, la suspensión de empleo y sueldo y la destitución de parte del Administrador ...”. Por ende, el Reglamento de Personal de 2000 provee las debidas dispo-siciones reglamentarias para que el Administrador de la C.F.S.E. lleve a cabo acciones disciplinarias ante la viola-ción de las reglas que rigen la conducta de los empleados en el ámbito laboral.
Por otro lado, el Art. 23 del Reglamento de Personal de 2000 preceptúa que “\p]or la presente queda derogada cual-quier otra norma, regla o reglamento que esté en conflicto con las disposiciones de este Reglamento”. (Énfasis suplido.) Así, pues, si analizamos esta cláusula derogatoria según el palio del Art. 5 del Código Civil, supra, es forzoso concluir que existe una derogación parcial y expresa, pero solamente sobre toda norma, regla o reglamento que esté en conflicto o sea contrario a las disposiciones del referido Reglamento.
Ante la ausencia de un nuevo manual de medidas disci-plinarias aprobado a raíz de la entrada en vigor del Regla-mento de Personal de 2000, no vemos que el Manual de Medidas Disciplinarias aprobado en 1983 sea incompatible o esté en conflicto con las disposiciones antes mencionadas del Reglamento de Personal de 2000 ni con dicho cuerpo normativo en su totalidad. Más aún, entendemos que el *402 Manual es compatible con el esquema de sanciones disci-plinarias preceptuado en el Reglamento de Personal de 2000. Por esta razón, entendemos que este Reglamento de-rogó parcialmente el Reglamento de Personal de 1983. A saber, que solo se derogaron aquellas disposiciones incompatibles o incongruentes con el Reglamento de Personal de 2000.
Como vimos, el Manual de Medidas Disciplinarias de 1983 es compatible con el reglamento en vigor al momento de ocurrir los hechos que dieron base a estos casos. Decidir lo contrario sería determinar que desde la aprobación del Reglamento de Personal de 2000 hasta que se aprobara un nuevo manual de medidas disciplinarias nuevo, no se podía imponer sanción disciplinaria alguna sin violar el debido proceso de ley en su vertiente procesal, lo que sería incon-gruente con las disposiciones anteriormente referidas del propio Reglamento de Personal de 2000.
Según estos preceptos, pasemos a resolver el caso de autos.
III
En este caso, el señor Calderón Otero, según el derecho anteriormente expuesto, posee un derecho propietario so-bre su empleo y fuente de ingresos. Por esta razón, es im-perativo que, al activarse las salvaguardas constituciona-les de debido proceso de ley en su fase procesal, se le hayan honrado las garantías mínimas durante el proceso discipli-nario llevado en su contra. De lo contrario, la C.F.S.E. ha-brá actuado ultra vires y, por ende, su actuación se debería considerar nula por privar al empleado de su interés pro-pietario sin las referidas protecciones constitucionales mínimas.
En el primer recurso, mediante el cual revisamos si pro-cedía una suspensión de empleo y salario por un periodo de treinta días, el Tribunal de Apelaciones concluyó que dicha *403 medida disciplinaria no contó con las garantías mínimas del debido proceso de ley, pues al momento de ocurrir los hechos que dieron paso al proceso disciplinario, la C.F.S.E. no contaba con un manual de medidas disciplinarias vigente. Esto, pues entendió que el Reglamento de Personal de 2000 derogó por completo el Reglamento de Personal de 1983 que facultó la creación del Manual de Medidas Disciplinarias de ese mismo año. Igual interpretación al respecto esboza el señor Calderón Otero en su alegato.
Por otro lado, en el segundo recurso traído ante nuestra consideración, en el cual se cesanteó al señor Calderón Otero, el foro apelativo intermedio decidió todo lo contrario. En esencia, dicho foro concluyó que el Regla-mento de Personal de 2000 no derogó completamente el Reglamento de Personal de 1983, lo que tuvo como efecto que, al no aprobarse ningún manual de medidas discipli-narias al amparo del Reglamento de Personal de 2000, el Manual de Medidas Disciplinarias de 1983 aplicó al mo-mento de los hechos en este caso. Esta interpretación nos es más plausible según el derecho expuesto.
Como se mencionó anteriormente, el Manual de Medi-das Disciplinarias de 1983 es compatible con las disposicio-nes del Reglamento de Personal de 2000. Este último fa-culta y obliga al Administrador de la C.F.S.E. a adoptar un nuevo manual de medidas disciplinarias, lo que, al ocurrir los eventos que provocaron el proceso disciplinario en el caso de autos, no había sucedido. Como el Reglamento de Personal de 2000 contiene una cláusula derogatoria que derogó parcialmente aquellas disposiciones incompatibles con dicho reglamento —dispuestas en el Reglamento de Personal de 1983— es forzoso concluir que al momento de ocurrir los hechos de este caso, el Manual de Medidas Dis-ciplinarias de 1983 estaba vigente. Determinar lo contra-rio, no solo sería ilógico en tanto el Reglamento de Personal de 2000 provee un mecanismo de proceso disciplinario o correctivo que no contaría con reglas disciplinarias, sino *404 que tendría la consecuencia de privarle al Administrador de la C.F.S.E. de un procedimiento para disciplinar a un empleado. Ello, en esencia, conllevaría que no se podría suspender o cesantear, como en este caso, a ningún em-pleado o empleada de la C.F.S.E., aun cuando el Regla-mento de Personal de 2000 contiene un procedimiento co-rrectivo o disciplinario.
Determinado que regía el Manual de Medidas Discipli-naras de 1983 al momento de ocurrir los hechos que dieron paso al proceso disciplinario impugnado, procedemos a analizar si se cumplió con las demás garantías mínimas al privarle al señor Calderón Otero de su interés propietario sobre su empleo.
Luego de varias cartas de amonestación por su desem-peño en el ámbito laboral, el 13 de mayo de 2004, el señor Calderón Otero recibió una comunicación escrita del Admi-nistrador de la C.F.S.E. en la cual se le notificó la intención de la agencia de suspenderlo de empleo y sueldo por treinta días. Dicha misiva contó con la notificación al em-pleado sobre los hechos específicos que provocaron el co-mienzo del proceso disciplinario. Además, se le notificó de su derecho a solicitar, en el plazo de cinco días a partir de la notificación, una vista informal para impugnar los car-gos presentados en su contra. El 17 de junio de 2004 se celebró la correspondiente vista ante un Oficial Examina-dor, quien el 27 de agosto de ese año rindió un informe en el cual recomendó la suspensión del señor Calderón Otero por treinta días laborables de empleo y sueldo. El 10 de septiembre de 2004, el Administrador de la C.F.S.E. le in-formó al señor Calderón Otero su decisión de confirmar dicha medida disciplinaria.
Ante este cuadro fáctico, entendemos que la agencia ad-ministrativa cumplió con las garantías mínimas de notifi-cación sobre el proceso y los cargos presentados en contra del empleado; proceso ante un juez imparcial, como fue el *405 Oficial Examinador durante una vista informal; la oportu-nidad de ser oído y presentar prueba a su favor durante la referida vista; con el derecho a abogado y con una determi-nación a base del expediente del caso. Por lo tanto, enten-demos que la acción del Administrador de la C.F.S.E. al suspender al señor Calderón Otero no fue ultra vires ni irrazonable, por lo que, en este caso, debemos darle defe-rencia al respecto.
De otra parte, luego de cumplido el período de suspen-sión de treinta días, el 24 de octubre de 2005, el señor Calderón Otero recibió de parte del Administrador de la C.F.S.E. una notificación escrita sobre la intención de des-tituirlo de su empleo por los cargos esbozados anterior-mente en los hechos de este caso. Además, dicha notifica-ción le informó al señor Calderón Otero sobre su derecho a solicitar una vista informal ante un Oficial Examinador. Celebrada la vista y rendido el correspondiente informe del Oficial Examinador en el cual recomendó la destitución del empleado, el 5 de febrero de 2007, el Administrador de la C.F.S.E. le notificó al señor Calderón Otero su destitución, además de su derecho a apelarla.
Al igual que cuando se le suspendió por treinta días de empleo y sueldo, al señor Caldero Otero se le respetaron las garantías mínimas del debido proceso de ley. A saber, dicho proceso contó con una notificación escrita mediante la cual se especificaron los cargos por los cuales se le dis-ciplinaba y los hechos que provocaron la acción correctiva de la agencia administrativa. Además, se le notificó sobre su derecho a una vista informal frente a un Oficial Exami-nador que fungiría como juez imparcial en el proceso. En dicha vista el señor Calderón Otero contó con el derecho a abogado y a presentar e impugnar prueba. A base de la prueba desfilada, el Oficial Examinador rindió un informe mediante el cual recomendó la destitución del empleado, recomendación que acogió el Administrador de la C.F.S.E. *406 y así se lo notificó al señor Calderón Otero. En dicha mi-siva, además, se le informó de su derecho a apelar tal de-terminación ante la Junta.
Examinado el proceder de la C.F.S.E., entendemos que este se basó en un proceso que garantizó los preceptos mí-nimos del debido proceso de ley de rango constitucional. De igual manera, entendemos que las determinaciones disci-plinarias, tanto de suspensión como de destitución, se ba-saron en prueba sustancial que razonablemente sostienen la decisión de la C.F.S.E. en el caso de autos. Por lo tanto, no se extralimitó en sus funciones el Administrador de la C.F.S.E. al presentarle cargos al señor Calderón Otero a base del Manual de Medidas Disciplinaras de 1983 ni al tomar las acciones disciplinarias de suspensión ni destitu-ción según la prueba que surge del expediente.
IV
Por los fundamentos antes expuestos, se revoca la sen-tencia del Tribunal de Apelaciones en el caso CC-2009-0625. Asimismo, se expide el auto de “certiorari” en el re-curso CC-2010-0189 y se confirma la sentencia del foro apelativo intermedio.

Se dictará sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez concu-rrió con el resultado sin opinión escrita. El Juez Asociado Señor Rivera García no interviene.

 Según surge del expediente, al Sr. Wilfredo Calderón Otero se le informó que, el 27 de agosto de 2003, usó un tono irrespetuoso para dirigirse al Director de Fi-nanzas, cuestionó su autoridad e indicó que no aceptaría sus consejos. De igual forma, se le acusó de utilizar lenguaje obsceno en el lugar de trabajo y cometer varios errores en sus tareas, como por ejemplo, utilizar códigos incorrectos para las cuentas que maneja.

 Los cinco incisos del Manual de Medidas Disciplinarias del Reglamento de 1983 son los siguientes:
5. Conducta desordenada en predios del F.S.E. tales como juegos de mano, bro-mas pesadas, intimidar o abusar de otros empleados y palabras obscenas.
7. Cometer o provocar agresión, riña o desorden dentro del F.S.E. (se tomará en consideración si es o no en horas laborales y cómo se afectan adversamente la moral, la productividad o la disciplina).
9. Conducta impropia dentro o fuera de tal naturaleza que afecte el buen nom-bre, refleje el descrédito o ponga en dificultad al F.S.E. o a cualquier agencia o dependencia del Gobierno de Puerto Rico.
21. Insubordinación (negarse a acatar órdenes, insolencia o comportamiento impropio).
38. Insubordinación o falta de respeto a un supervisor.